PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-4442

_____


UNITED STATES OF AMERICA

v.

GREGORY GARRETT BROWN,

Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 1-11-cr-00034-001)
District Judge: Honorable Maurice B. Cohill, Jr.

_____

Argued June 12, 2014

Before: AMBRO and BARRY, <u>Circuit Judges</u>,
and RESTANI,[*] <u>Judge</u>

(Opinion filed: September 2, 2014)

_____

[*] Honorable Jane A. Restani, Judge, United States Court of
International Trade, sitting by designation.

Thomas W. Patton   (Argued)
   Assistant Federal Public Defender
Office of Federal Public Defender
1001 State Street
1111 Renaissance Centre
Erie, PA   16501

      Counsel for Appellant


Rebecca Ross Haywood (Argued)
   Assistant U.S. Attorney
Office of the United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA   15219

      Counsel for Appellee

——————————

OPINION  OF  THE  COURT

——————————


AMBRO, Circuit Judge

Gregory Garrett Brown appeals the decision of the District Court enhancing his sentence on a finding that he is a career offender.  For that finding, the Court followed the approach set out by our Court in *United States v. Mahone*, 662 F.3d 651 (3d Cir. 2011).  Brown contends the Supreme Court's decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013), overrules *Mahone*.  At issue is how far beyond

the literal words of a criminal statute a judge may inquire to find that a prior conviction qualifies for the career offender enhancement.

## I.    Background

In 2010, while serving time in state custody for another offense, Brown mailed a threatening letter to Magistrate Judge Susan Baxter.  Judge Baxter presided over the earlier dismissal of Brown's *habeas* petition.  In the letter, Brown intimated that upon his release from custody he planned to kill Judge Baxter and former District Judge Sean McLaughlin.  Following an investigation, Brown pled guilty to mailing a threatening communication in violation of 18 U.S.C. § 876(c).

A presentence investigation report ("PSR") recommended, among other things, that Brown be sentenced pursuant to the career offender enhancement in the United States Sentencing Guidelines.  That enhancement applies to a defendant convicted under § 876(c) if he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  The PSR's recommendation was based on four prior offenses in Brown's criminal history: (1) a 1986 conviction for aggravated assault, in violation of 18 Pa. Cons. Stat. § 2702; (2) a 2004 conviction for making terroristic threats, in violation of 18 Pa. Cons. Stat. § 2706; (3) a 2005 conviction also for making terroristic threats, in violation of § 2706; and (4) a 2005 conviction for retaliating against a judicial officer, in violation of 18 Pa. Cons. Stat. § 4953.1.  The two 2005 convictions arose from the same conduct.

A pair of concessions by the parties limited the dispute at sentencing and similarly limits the breadth of our review on appeal:  Brown concedes that his 1986 conviction qualifies as

3

a crime of violence for purposes of the enhancement, and the Government does not contend that the 2005 retaliation conviction so qualifies. Thus the parties' arguments at sentencing focused on whether either of Brown's two convictions for making terroristic threats in violation of § 2706 counted as qualifying (called predicate) offenses for purposes of the enhancement.

The definitional part of the Pennsylvania statute divides violations into three categories, only the first of which—§ 2706(a)(1)—can be a predicate offense. That Brown's convictions, the Government contended, were predicate offenses was conclusively decided by an earlier case, *United States v. Mahone*, 662 F.3d 651 (3d Cir. 2011), which held that some, but not all, violations of subsection (a)(1) were predicate offenses and that a sentencing judge may inquire further to determine if the facts of a prior conviction qualified. Among other arguments, Brown countered that *Mahone* is no longer controlling in light of *Descamps v. United States*, 133 S. Ct. 2276 (2013), in which the Supreme Court held that a sentencing court may not look to the facts underlying a prior conviction but instead must look to its elements.

Before the sentencing hearing, Judge Cohill issued tentative findings rejecting Brown's argument. Relying on *Mahone*, he concluded that a violation of subsection (a)(1) was a crime of violence (thus a predicate offense under the Guidelines) and that the documents underlying Brown's conviction demonstrated that he was convicted under that subsection in 2004. He also determined that the 2005 terroristic threats conviction did not qualify as a predicate offense because the documents supporting that conviction did not definitively establish under which subsection of the statute Brown was convicted. Addressing the effect of *Descamps*, Judge Cohill explained that *Mahone* was at most

4

"overruled in its analysis of the FACTS of the case for making a determination of career offender, not the case's determination of (a)(1) as a crime of violence." App. at 10 n.5 (emphasis in original). He thus applied the career offender enhancement based on Brown's 1986 aggravated assault conviction and his 2004 terroristic threats conviction. The enhancement raised Brown's offense level and his criminal history category, more than doubling his recommended Guidelines' sentence from 30-37 months to 77-96 months. The Court sentenced Brown to 84 months' imprisonment. This timely appeal followed.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. "Whether a prior conviction constitutes a crime of violence for purposes of the career offender Guideline is a question of law over which we exercise plenary review." *United States v. Marrero*, 743 F.3d 389, 393 (3d Cir. 2014).

## III.    Discussion

On appeal, Brown contends that the career offender enhancement did not apply to him because he has only one predicate "crime of violence" in his criminal history (the 1986 aggravated assault conviction) and the Guidelines require two predicate offenses for the enhancement to apply. The Government responds that either the 2004 or the 2005 terroristic threats conviction supplies the necessary second predicate offense. Brown asserts that his convictions under the Pennsylvania terroristic threats statute are not "crimes of violence" as defined by the Guidelines.

5

We conclude that, in light of the Supreme Court's explanation in *Descamps*, Brown's convictions under 18 Pa. Cons. Stat. § 2706 are not "crimes of violence" for purposes of the Guidelines' career offender enhancement. In effect, *Descamps* abrogated the portion of *Mahone* that held otherwise.

## A.     The Career Offender Enhancement

Under the Guidelines, the career offender enhancement applies to a defendant if:

> (1) [he] was at least eighteen years old at the time [he] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) [he] has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The issue here is the third criterion—whether the 2004 (or 2005) conviction is a "crime of violence." How we go about deciding that issue, and what we can consider in doing so, takes up much of what follows.

The Guidelines define a "crime of violence" in relevant part as any crime punishable by more than a year of imprisonment that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).[1] Sentencing courts

---

[1] A prior conviction may also be a "crime of violence" if it "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G.

6

examining a prior conviction to determine whether it is a federally defined "crime of violence" must apply a categorical approach. *United States v. Abbott*, 748 F.3d 154, 157 (3d Cir. 2014) (citing *Descamps*, 133 S. Ct. at 2283).[2] Under this approach sentencing courts "compare the elements

§ 4B1.2(a)(2). This category, which has an analog in the Armed Career Criminal Act (ACCA), *see* 18 U.S.C. § 924(e)(2)(B)(ii), is sometimes referred to as the list of "generic crimes" or "generic offenses." *See Descamps*, 133 S. Ct. at 2282. Nothing in § 4B1.2(a)(2) states that a threat to commit a generic crime is itself a "crime of violence," and the Government has never argued that Brown's § 2706 convictions fall under § 4B1.2(a)(2).

[2] Although *Abbott* and *Descamps* involved sentencing enhancements under the ACCA, rather than the career offender enhancement in the Guidelines, they nonetheless bind our analysis. "Precedent . . . requires the application of case law interpreting 'violent felony' in [the] ACCA to 'crime of violence' in U.S.S.G. § 4B1.2[ ] because of the substantial similarity of the two sections." *Marerro*, 743 F.3d at 394 n.2 (second alteration added) (internal quotation marks and citation omitted). *See also United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009) ("[T]he definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence under the Sentencing Guidelines that authority interpreting one is generally applied to the other . . . ."). Both before and after *Descamps* we have consistently applied the categorical approach to determinations under the career offender enhancement. *Compare United States v. Stinson*, 592 F.3d 460, 462 (3d Cir. 2010), *with Marrero*, 743 F.3d at 395, *and United States v. Jones*, 740 F.3d 127, 133 (3d Cir. 2014).

of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps*, 133 S. Ct. at 2281. In practice, courts "may 'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *Id.* at 2283 (emphasis in original) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). In the ordinary case of identifying whether a prior conviction fits the § 4B1.2(a)(1) definition, a court simply asks "whether the state crime has the use or threat of physical force [against the person of another] as an element of the offense." *United States v. Remoi*, 404 F.3d 789, 794 (3d Cir. 2005) (internal quotation marks omitted). If the state statute "sweeps more broadly" than the federal definition, a conviction under it is not a career offender predicate even if the defendant actually committed the offense in a way that involved the use (or threatened use) of physical force against another. *See Descamps*, 133 S. Ct. at 2283 (explaining that a defendant convicted of a burglary statute that "sweeps more broadly" than the ACCA's generic burglary offense is not subject to the enhancement "even if the defendant actually committed the offense in its generic form").

However, there is a "narrow range of cases" whereby a court can look beyond the fact of conviction and examine certain record evidence from the conviction to determine whether the prior offense is a crime of violence. *Taylor*, 495 U.S. at 602. In *Descamps,* the Supreme Court explained that when a statute is "divisible"— *i.e.*, "comprises multiple, alternative versions of the crime"—a sentencing court may look to a limited class of extra-statutory documents to determine which version of the offense was the basis of conviction. 133 S. Ct. at 2284. This is known as the

8

"modified categorical approach." *Id.* at 2283. Under this approach, if a statute is divisible, a court may consult "the charging paper and jury instructions" when the conviction resulted from a jury trial, *Taylor*, 495 U.S. at 602, or, when the conviction resulted from a guilty plea, "the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). The modified categorical approach still "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Descamps*, 133 S. Ct. at 2285. It simply allows a sentencing court "to examine a limited class of documents to determine which of a statute's alternative *elements* formed the basis of the defendant's prior conviction." *Id.* at 2284 (emphasis added).

It bears repeating that the modified categorical approach is "applicable only to divisible statutes." *Id.*; *accord id.* at 2285 ("[T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute."). In *Descamps*, for example, the Supreme Court held that the modified approach could not be applied to the California burglary statute at issue because it had a "single, indivisible set of elements." *Id.* at 2282. To explain the difference between a divisible and indivisible statute, and why the modified categorical approach may be used only with the former, the Court imagined a hypothetical assault statute that simply required the "use of a 'weapon,'" as opposed to a specific list of weapons. *Id.* at 2289 (internal quotation marks omitted). Including a "weapon" as an element of the crime makes the statute indivisible because it creates only an "*implied* list" of the ways the offense may be committed rather than an explicit list of ways to commit the crime. *Id.* (emphasis in original). A sentencing court should not examine extra-statutory documents (such as a charging document or guilty plea) and

9

find that a defendant committed a predicate gun crime based on a conviction under such an indivisible statute because,

> [a]s long as the statute itself requires only an indeterminate "weapon," that is all the indictment must (or is likely to) allege and all the jury instructions must (or are likely to) mention. And most important, that is all the jury must find to convict the defendant. The jurors need not all agree on whether the defendant used a gun or a knife or a tire iron (or any other particular weapon that might appear in an imagined divisible statute), because the actual statute requires the jury to find only a "weapon." And even if in many cases[] the jury could have readily reached consensus on the weapon used, a later sentencing court cannot supply that missing judgment. Whatever the underlying facts or the evidence presented, the defendant still would not have been convicted, in the deliberate and considered way the Constitution guarantees, of an offense with the same (or narrower) elements as the supposed generic crime (assault with a gun).

*Id.* at 2290.

By contrast, a statute is "divisible" when it "list[s] potential offense elements in the alternative." *Id.* at 2283. For example, continuing with the Supreme Court's hypothetical, it considered for analysis an assault statute that prohibits assault with a "gun, axe, sword, baton, slingshot, knife, machete, bat," "grenade[], pipe bomb[], spear[], tire iron[], BB gun[], nunchucks, [or] crossbow[]." *Id*. at 2289-90 (internal quotation marks omitted). Under such a statute, if assault with a gun is categorically (that is, always) a predicate

10

offense, then a sentencing court may examine the documents underlying a defendant's conviction to see whether he was charged with and convicted of using a gun.  *Id.* at 2290.

Furthermore, a sentencing court should apply the modified approach to a divisible statute and examine extra-statutory documents only when "at least one, but not all" of the separate versions of the offense is, by its elements, a predicate offense.  *Id.* at 2285.  As the Fourth Circuit has explained, "[g]eneral divisibility . . . is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, *by its elements*, a crime of violence."  *United States v. Cabrera-Umanzor*, 728 F.3d 347, 352 (4th Cir. 2013) (emphasis in original) (citing *Descamps*, 133 S. Ct. at 2285).

The modified categorical approach is perhaps best explained by a generic example.  Imagine a defendant previously convicted for violating Statute X.  In considering whether that prior conviction is a predicate offense, a sentencing should first determine whether a violation of X is, no matter the circumstances of the particular crime, always a crime of violence.  If so, it is a predicate offense under the regular categorical approach and there is no need to analyze the statute any further.  If, on the other hand, the court determines that X is overbroad (*i.e.*, it covers some conduct that is a crime of violence and some that is not), the court should then inquire whether X is divisible.  If the court determines that X is generally divisible into, say, three versions of the offense—subsections a, b and c—it should next determine whether any of these subsections (for example, X(a)) is, by its particular elements, always a federally defined crime of violence.  If so, then the court may apply the modified categorical approach to determine whether

11

the defendant was convicted under X(a). That is the typical way in which the modified categorical approach operates.

This case probes how far the modified categorical approach logically extends if a statute is divisible into subparts but no version of the offense (a, b or c) is in all circumstances a crime of violence. May a sentencing court nonetheless look to extra-statutory documents to see whether the particular offense a defendant committed was a crime of violence? Or must the Court halt its analysis and find that the conviction is not a predicate offense? *Descamps*, which took a hard line on how the modified categorical approach operates, requires the latter. If a statute is generally divisible into multiple versions, but each version is overbroad (covers at least some conduct that is not a crime of violence) and indivisible (cannot be further divided into sub-versions *based on the elements*), the extra-statutory documents are irrelevant and a sentencing court's analysis has reached a dead-end: the prior conviction is not a predicate offense. *See Descamps*, 133 S. Ct. at 2283.

We now turn to the particular statute—the Pennsylvania terroristic threats statute, 18 Pa. Cons. Stat. § 2706—underlying Brown's 2004 and 2005 convictions.

## B.     The Terroristic Threats Statute

*Descamps* instructs that we focus on the elements of the offense rather than Brown's particular conduct in committing the offense. Section 2706 prohibits

> communicat[ing], either directly or indirectly, a threat to:
>
> > (1) commit any crime of violence with intent to terrorize another;

> (2) cause evacuation of a building, place of assembly or facility of public transportation; or
>
> (3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa. Cons. Stat. § 2706(a).

Because § 2706(a) is phrased in the disjunctive—"describing three variations of the same offense"—the statute is divisible into subsections (a)(1), (a)(2), and (a)(3), *Mahone*, 662 F.3d at 654,[3] and we apply the modified categorical approach to discern which of the three versions of the offense a defendant was convicted of if at least one of the versions by its elements is a crime of violence in all instances. *Descamps*, 133 S. Ct. at 2285. The provision "encompasses some crimes that could be committed by using, attempting to use, or threatening to use 'physical force *against the person of another*,' as well as against another person's property." *Mahone*, 662 F.3d at 653 (emphasis in original). Crimes threatened, attempted, or committed against the person of another may fit the applicable Guidelines' definition of a "crime of violence"—"the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1)—while crimes against property do not. *Id.* Subsection (a)(1) is thus the only version of the offense that

_____

[3] We cite to *Mahone* frequently in our analysis of § 2706 even though *Descamps* supersedes it. We do so because, as explained below, *Mahone* was abrogated only in part. Thus much of its analysis of the Pennsylvania terroristic threat statute still guides our analysis here.

potentially qualifies as a "crime of violence" because only it may involve an intentional threat to use force against a person. *Id.* at 654-55.

But a determination that a defendant was previously convicted under § 2706(a)(1) does not end the inquiry. The subsection prohibits threatening to "commit any crime of violence with intent to terrorize another," yet it does not define what is a "crime of violence." Though we might think Pennsylvania's definition matches the definition in the Guidelines, thereby making any violation of § 2706(a)(1) a predicate offense, we cannot conclude that without further application of the categorical approach. *See Mahone*, 662 F.3d at 655 ("We cannot conclude at this step in our analysis that the statutory variation in § 2706(a)(1) categorically qualifies as a [crime of violence] . . . because this variation of the statute contains the undefined term 'crime of violence.'").

As we observed in *Mahone*, another Pennsylvania statute defines a "crime of violence" for purposes of sentencing. 42 Pa. Cons. Stat. § 9714(g); *Mahone,* 662 F.3d at 655 (citing *United States v. Ortiz-Gomez*, 562 F.3d 683, 685-86 (5th Cir. 2009)). Included within that definition is a version of arson that does not necessarily "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); *see Ortiz-Gomez*, 562 F.3d at 686 (citing 18 Pa. Cons. Stat. §§ 3301(a)(1) and 9714(g)) (observing that in Pennsylvania arson can be committed by "start[ing] a fire for the purpose of damaging a structure . . . regardless of whether a person is present"). Because in Pennsylvania arson can exist "regardless of whether a person is present," that crime would not be included in the Guidelines' definition of a "crime of violence." *Mahone*, 662 F.3d at 655-56 (quoting *Ortiz-Gomez*, 562 F.3d at 686). Hence a threat to commit arson with intent to terrorize another—a violation of § 2706(a)(1)—

14

would not be a predicate offense under § 4B1.2(a) of the Guidelines. *Id.* at 655-56.[4]

A violation of § 2706(a)(1) thus may sometimes be a "crime of violence" as defined by the Guidelines (for example, threatening to commit murder) and sometimes not (for example, threatening to commit arson). *See id.* at 656. Moreover, unlike the hypothetical assault statute from *Descamps* that listed each type of weapon, § 2706(a)(1) does not list each crime of violence, and thus it is also indivisible. *See Descamps*, 133 S. Ct. at 2290. Because the categorization of a § 2706 offense depends on a *fact* underlying the conviction (the crime the defendant threatened) that is not an element of the offense, *Descamps* instructs that the statute is overbroad and indivisible as to (a)(1) and thus fails as a predicate offense under the categorical approach. *See* 133 S. Ct. at 2281-82 (prohibiting a court from looking to an offender's underlying conduct to determine that a prior conviction qualifies as a predicate offense when "the elements of the crime fail to satisfy [the] categorical test"). The Supreme Court unambiguously rejected this so-called "modified factual" approach. *Id.* at 2287 (internal quotation marks and citation omitted). It explained that the problem is that this approach "asks not whether 'statutory definitions' necessarily require an adjudicator to find [a crime of violence], but instead whether the prosecutor's case realistically led the adjudicator to make that determination." *Id.*

---

[4] One might wonder why a threat to commit arson does not qualify as a predicate offense under § 4B1.2(a)(2) of the Guidelines. *See supra* note 1. The Government has never argued that it does, perhaps because subsection (a)(2) covers the offense of arson, not the threat to commit arson.

15

*Mahone*, which was decided before *Descamps*, applied precisely the sort of "modified factual" approach the Supreme Court has since disavowed. In *Mahone*, the criminal record of the defendant included a conviction under a nearly identical predecessor to the current Pennsylvania terroristic threats statute. 662 F.3d at 653. He was charged with "threaten[ing] to commit the violent crime of criminal homicide with intent to terrorize [the victim]." *Id.* at 656. The plea colloquy's factual recitation included the allegation that Mahone threatened to kill the victim, which he admitted by pleading guilty. *Id.*

Mahone appealed the sentencing judge's application of the enhancement, and we affirmed. *Id.* at 652. We concluded that, although subsection (a)(1) covered some conduct that would not be a "crime of violence" under the Guidelines, because Mahone was in fact charged with, and thus convicted of, threatening a federally defined "crime of violence," criminal homicide, his § 2706 conviction qualified as a predicate offense under the career offender enhancement. *Id.* at 657.

*Descamps* overrode that conclusion. Like the burglary statute there that criminalized simple shoplifting and "define[d] burglary more broadly than the generic offense" under the ACCA, 133 S. Ct. at 2285 (internal quotation marks omitted), we now hold that § 2706(a)(1) is overbroad in that it criminalizes conduct that is not always considered a federally defined "crime of violence." Hence a violation of the statute is categorically not a predicate offense for purposes of the career offender enhancement. *See Descamps*, 133 S. Ct. at 2283 ("[I]f the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form."). *Descamps* thus supersedes the portion of *Mahone* that held otherwise.

16

**C.     Application   of   the   Career   Offender Enhancement to Brown**

Returning to our case, the District Court, relying on *Mahone*, analyzed the facts underlying Brown's conviction, rather than focusing on the legal elements of the alleged predicate offense, to determine that Brown's 2004 terroristic threats conviction qualified for the career offender enhancement.  No doubt, given the facts surrounding Brown's 2004 and 2005 convictions, they would appear to be "crimes of violence" to a layperson.  The PSR explains that in 2004 Brown repeatedly threatened to harm two correctional officers at the Erie County Prison, including threats to murder the officers.  The charging document for the 2004 offense alleges that Brown stated, among other things, "When I get out of here, I'm gonna murder you bitch."  In 2005, much like the current offense of conviction, Brown apparently sent a letter to a state court judge in Erie, Pennsylvania, in which he threatened to kill the judge.

But *Descamps* rejects that approach; the factual circumstances of the conviction are not what matter, the key is the elements of the crime.  As we explained above and in *Mahone*, subsection (a)(1) of the Pennsylvania terroristic threats statute (the subsection under which Brown concedes he was convicted) is overbroad because, in using the undefined term "crime of violence," it covers at least one factual circumstance—threatening to commit arson—that does not meet the Guidelines' definition of a "crime of violence."  "The modified [categorical] approach . . . has no role to play[,]" *Descamps*, 133 S. Ct. at 2285, because no single subsection of § 2706, *by its elements*, can be categorized exclusively as a crime of violence and thus may not qualify as a predicate offense for the enhancement.

17

Other Circuit Courts that have examined a statute that contains multiple versions of an offense, none of which is categorically a crime of violence by its elements, have similarly concluded that the modified categorical approach does not apply to those statutes. In *Cabrera-Umanzor*, the Fourth Circuit was faced with a Maryland child abuse statute that was "*generally* divisible" into two categories: physical abuse and sexual abuse. 728 F.3d at 352 (emphasis in original). The plea agreement demonstrated that the defendant was convicted of committing sexual abuse, but that category "d[id] not, by its elements, constitute any of the potentially applicable crimes of violence enumerated in the Guidelines Commentary." *Id.* at 350, 352-53. The Court concluded that the Maryland statute is "therefore not divisible in the manner necessary to warrant application of the modified categorical approach." *Id.* at 353. Similarly, the Sixth Circuit, while examining a Tennessee robbery statute, applied *Descamps*' categorical approach as follows:

> *Descamps* may give the false impression that the presence of a divisible statute of conviction alone confers on a court the ability to turn to certain approved, extra-statutory documents. However, that is not so. The Supreme Court in *Descamps*, in analyzing a defendant's conviction for burglary, repeated the caveat that "[o]ur decisions authorize review of the plea colloquy or other approved extra-statutory documents only when a statute defines burglary . . . alternatively, *with one statutory phrase corresponding to the generic crime and another not.*"

*United States v. Mitchell*, 743 F.3d 1054, 1064 (6th Cir. 2014) (alteration and emphasis in original) (quoting *Descamps*, 133 S. Ct. at 2286). Finally, in *United States v. Tucker*, 740 F.3d

1177 (8th Cir. 2014) (en banc), the Eighth Circuit refused to apply the modified categorical approach to a Nebraska escape statute that criminalized certain types of escapes, only some of which qualified as predicate offenses, where the version of the offense of conviction was not, by its elements, a crime of violence. *See id.* at 1182.

While the above speaks of other Circuits, the Government, as it should, cites to our recent decision in *United States v. Blair*, 734 F.3d 218 (3d Cir. 2013), and argues that, where a statute is divisible at some level (here, into subsections (a)(1), (a)(2), and (a)(3)), a sentencing court may look to the extra-statutory documents to identify not only the subsection of conviction but also to determine whether the particular circumstances of the offense within that subsection comprise a "crime of violence." *See* Gov't Br. at 39-40 (citing *Blair*, 734 F.3d at 224-25). We agree that, at first blush, *Blair* appears to condone the analysis applied by the District Court here. But a careful reading of that opinion, which dealt with a different statute (18 Pa. Cons. Stat. § 3701), leads us to conclude that the portion of *Blair* on which the Government relies does not apply to our case.

Blair's prior robbery convictions resulted in his sentence as a career offender under the ACCA. On appeal we decided whether a robbery conviction in Pennsylvania that did not reference the applicable subsection of the statute was a violent felony under the ACCA. As here, three alternative versions of the offense were at issue. We considered whether the modified categorical approach could be used to determine that Blair was convicted under the "least culpable" of those, § 3701(a)(1)(iii). *Blair*, 734 F.3d at 225-26. That part of the statute makes it a crime in the course of a theft to "commit[ ] or threaten[ ] immediately to commit any felony of the first or second degree." § 3701(a)(1)(iii). Like *Mahone* and the District Court here, our Court concluded that Blair's

19

conviction was a violent felony under the ACCA because the extra-statutory documents demonstrated that he committed or threatened to commit during the course of the theft an aggravated assault—a felony "in the first or second degree . . . [that] clearly involves violence." *Id.* at 222-23.

Blair argued, among other things, that though § 3701(a)(1) as a whole is divisible into subsections (i), (ii), and (iii), the last, and applicable, subsection is not further divisible by the type of felony committed or threatened. He contended (similar to Brown's argument here) that § 3701(a)(1)(iii) is overbroad and indivisible because "some felonies of the first and second degree involve no violence." *Id.* at 225. We assumed Blair was correct that the subsection was "indivisible and categorically overbroad," yet rejected his argument. *Id.* We did so despite conceding that "*Descamps* makes it clear that if the relevant statute is indivisible . . . and . . . overbroad . . . , then the sentencing court cannot apply the modified categorical approach," *id.* at 224. The Government seizes on the language rejecting Blair's argument:

> There is no precedent for the argument that a sentencing court, having launched on the modified categorical approach, should stop when it gets to a statutory subsection and determine again whether to proceed with that approach and whether it can consider documents it has already reviewed. . . . [T]he documents that the District Court had reviewed as part of the modified categorical analysis plainly state that the felonies associated with [Blair's] 1991 robbery convictions were "aggravated assault." The search for the applicable subsection in the relevant statute does not send the sentencing judge into a state of amnesia. To shift the metaphor, the blinders

20

> are already off, and there is no requirement to
> pretend otherwise.

*Id.* at 225-26 (citation omitted); *see also* Gov't Br. at 35-36.

Applying this logic to our case, the Government argues that, because § 2706(a) is broadly divisible into subsections (a)(1), (a)(2), and (a)(3), once the sentencing court looked to the charging document and jury instructions to determine under which of those three subsections Brown was convicted, it was also free to use those documents to determine whether the particular circumstances of Brown's conviction under § 2706(a)(1) fit the federal definition of a "crime of violence." Only in that way, the argument goes, are the blinders off.

Though one may question the correctness of the above excerpt in *Blair* as a general matter,[5] it is distinguishable. By

---

[5] The issue primarily would involve *Blair*'s statement that a sentencing court can apply the modified categorical approach to a statutory subsection that is "indivisible and categorically overbroad." *Blair*, 734 F.3d at 225. We understand the instinct that there is an unjust cost for looking away from the facts of that case. In 1991, Blair pled guilty to four counts of first-degree robbery, in the process admitting that he committed or threatened to commit aggravated assault in the course of a theft. *Blair*, 734 F.3d at 221, 226. That certainly seems like a violent felony. But *Descamps* instructs that it is the elements, not the facts, of a prior conviction that matter, *see Descamps*, 133 S. Ct. at 2287, and the elements in § 3701(a)(1)(iii)—"any felony [in Pennsylvania] of the first or second degree"—include both felonies that are violent and those that are not. As a result, sentencing judges, at least for subsections not divisible solely by looking at their written

21

its own terms, a make-believe "state of amnesia" confined only to textual elements does not apply where the sentencing court has *already* embarked on a *permitted* use of the modified categorical approach. *See Blair*, 734 F.3d at 225 ("There is no precedent for the argument that a sentencing court, having launched on the modified categorical approach, should stop when it gets to a statutory subsection and determine again whether to proceed with that approach and whether it can consider documents it has already reviewed."); *id.* at 226 ("*Descamps* does not demand a recursive process wherein a district court that has already pursued the modified categorical approach in addressing a divisible statute is required to ignore the charging documents and guilty pleas it has just reviewed."). But where, as is our case, no version of a terroristic threats offense under § 2706(a) has elements that fit fully (that is, always) a crime of violence, a sentencing court may not use the modified categorical approach at all. *See Descamps*, 133 S. Ct. at 2285; *Mahone*, 662 F.3d at 654-55; *Cabrera-Umanzor*, 728 F.3d at 352-53; *Mitchell*, 743 F.3d at 1064. Accordingly, the District Court could not apply the modified categorical approach in the first place and *Blair* does not control.

## IV.    Conclusion

The Supreme Court's concluding remarks in *Descamps* all but decide this case: "[The defendant] may . . . have broken and entered, and so committed generic burglary [under the ACCA]. But [the California burglary statute]—the crime of which he was convicted—does not

---

elements, may look no further no matter how well they understand the actual facts contained in extra-statutory documents.

require the factfinder (whether jury or judge) to make that determination." 133 S. Ct. at 2293. So too here, Brown may have threatened to murder persons in 2004 and 2005 and so committed a "crime of violence." But § 2706(a)—the crime of which he was convicted—does not require the jury to make that determination. Thus the modified categorical approach has no permitted use. Because this holding applies equally to the 2004 and 2005 terroristic threats convictions of Brown, and the Government does not argue that any other offense in his criminal history qualifies as a predicate offense, the career offender enhancement did not apply to him.

We make no comment on the correct sentence for Brown. Under 18 U.S.C. § 3553(a), the District Court has the discretion to fashion an appropriate sentence under the factors noted therein and in doing so is free to take into account his pattern of behavior over the years, including his conduct in 2004 and 2005. We hold only that, in light of the Supreme Court's ruling in *Descamps*, the career offender enhancement is not available in this case. We thus vacate Brown's judgment of sentence and remand for resentencing.