PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1082

_____

UNITED STATES OF AMERICA

v.

ISHMAEL ABDULLAH,
a/k/a Ish, a/k/a Gangsta, a/k/a Papi

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-17-cr-00316-001)
District Judge:  Hon. Freda L. Wolfson

_____

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2018

Before:  JORDAN, VANASKIE, and NYGAARD, *Circuit
Judges*

(Opinion Filed:  October 2, 2018)

_____

David E. Schafer, Esq.
3131 Princeton Pike
Building 3D, Suite 2
Lawrenceville, NJ 08648
       *Counsel for Appellant*

Craig Carpenito, Esq.
Steven G. Sanders, Esq.
Office of United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
       *Counsel for Appellee*

———————————

OPINION OF THE COURT

———————————

JORDAN, *Circuit Judge*.

Ishmael Abdullah pled guilty to two federal offenses, one for conspiring to distribute and possess with intent to distribute heroin, and the other for being a felon in possession of a firearm. When he was sentenced, the District Court concluded that he was subject to sentencing enhancements for, among other things, being a career offender under § 4B1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "the guidelines"). That conclusion was based in part on Abdullah's 2015 conviction for third-degree aggravated assault with a deadly weapon under § 2C:12-1(b)(2) of the New Jersey Statutes Annotated ("N.J.S.A."). Abdullah now appeals his sentence, arguing that the career-offender enhancement does not apply to him because his New Jersey conviction for third-degree aggravated assault is not a

"crime of violence" under the guidelines. We disagree and, for the reasons that follow, will affirm the sentence.

## I. BACKGROUND

Abdullah was involved in a drug-trafficking organization that distributed heroin in New Jersey. He was arrested by federal agents and charged in a two-count information with knowingly and intentionally conspiring to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and 21 U.S.C. § 846, and with illegally possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He pled guilty to both counts.

In preparation for recommending how the guidelines should apply at sentencing, a probation officer prepared a Presentence Investigation Report ("PSR"). The PSR reflected a base offense level of 28, after concluding that Abdullah had been supplied with, and was thus responsible for, at least 700 grams of heroin. The PSR then recited a number of enhancements and adjustments in calculating the total offense level. One enhancement was for Abdullah's career offender status under U.S.S.G. § 4B1.1,[1] which was determined on the

---

[1] Section 4B1.1(a), known as the career-offender enhancement, applies:

> if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance

3

basis of two earlier felony convictions, one of which was a 2015 conviction in New Jersey state court for third-degree aggravated assault with a deadly weapon,[2] in violation of N.J.S.A. § 2C:12-1(b)(2).[3]  Another adjustment was made pursuant to U.S.S.G. § 3B1.1(a) for Abdullah's role as an organizer or leader of a conspiracy that involved at least five participants.[4]  Abdullah objected to the attribution of at least

---

> offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).  For statutory offenses carrying a maximum term of imprisonment of 25 years or more, the offense level must be at least 34, if the enhancement is to apply.  *Id.* § 4B1.1(b).

[2]  The other was a 2010 conviction in New Jersey state court for the manufacture or distribution, or intent to manufacture or distribute, a controlled dangerous substance.

[3]  That New Jersey statute provides that "[a] person is guilty of aggravated assault if he … [a]ttempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon[.]"  N.J.S.A. § 2C:12-1(b)(2).  It is a crime of the third degree.  *Id.* § 2C:12-1(b).

[4] Section 3B1.1(a), known as the organizer-or-leader enhancement, states that a defendant's offense level should be increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more

4

700 grams of heroin to him and to application of the organizer-or-leader and career-offender enhancements.

At sentencing, he reiterated those objections and the District Court overruled them. It concluded then and in a detailed post-hearing opinion that Abdullah was responsible for at least 700 grams of heroin and that application of the four-level organizer-or-leader enhancement under § 3B1.1(a) was appropriate. It also determined that Abdullah's conviction under N.J.S.A. § 2C:12-1(b)(2) for third-degree aggravated assault with a deadly weapon categorically qualified as a "crime of violence" under the guidelines. Thus, the Court applied the career-offender enhancement as provided in § 4B1.1, which put Abdullah's offense level at 34. After other adjustments for acceptance of responsibility, the total offense level was 31, and his criminal history category was VI. The resulting recommended guidelines sentencing range was 188 to 235 months' imprisonment, two to five years of supervised release, and $30,000 to $5 million in fines. The Court ultimately sentenced Abdullah to 176 months' imprisonment and five years of supervised release on the controlled substance charge, and a concurrent 120 months' imprisonment and three years of supervised release on the firearm charge. It waived any fine but ordered him to forfeit his firearm and associated ammunition, and it imposed special assessments totaling $200.

This timely appeal followed.

---

participants or was otherwise extensive[.]" U.S.S.G. § 3B1.1(a).

## II.    DISCUSSION[5]

Abdullah challenges his sentence on the same three grounds he pressed before the District Court: first, that he is not a career offender because his conviction under New Jersey law for third-degree aggravated assault does not categorically qualify as a crime of violence under the guidelines; second, that the organizer-or-leader enhancement does not apply to him; and third, that it was factually erroneous to hold him responsible for 700 grams or more of heroin.  None of those arguments is persuasive, but only the one regarding the career offender question needs consideration.  Because Abdullah is a career offender, his other sentencing complaints are of no consequence.[6]

Under the guidelines, a defendant is a career offender if, among other things, he "has at least two prior felony convictions of either a crime of violence or a controlled

---

[5] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

[6]  "Whether a … conviction constitutes a crime of violence for purposes of the career offender [g]uideline is a question of law over which we exercise plenary review." *United States v. Chapman*, 866 F.3d 129, 131 (3d Cir. 2017) (first alteration in original) (quoting *United States v. Brown*, 765 F.3d 185, 188 (3d Cir. 2014)).

6

substance offense."[7]  U.S.S.G. § 4B1.1(a).  In 2015, the guidelines defined a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that[:]"

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 4B1.2(a) (2015).  We refer to the first subsection as the "elements clause."  The first part of the second subsection is the "enumerated offenses clause," and the latter part of that subsection is the "residual clause."  Our focus here is solely on the elements clause.[8]

---

[7]    There is no dispute that Abdullah's 2010 drug conviction qualifies as a "controlled substance offense" for purposes of the career-offender enhancement.

[8]    No one disputes that Abdullah's third-degree aggravated assault conviction under New Jersey law is for an offense punishable by imprisonment for more than one year. *See* N.J.S.A. § 2C:43-6(a)(3) (stating that the term of imprisonment for a person convicted of a crime of the third degree "shall be between three years and five years"). Furthermore, because we ultimately conclude that Abdullah's aggravated assault conviction is a crime of violence under the elements clause, we need not consider the applicability of

To determine whether a previous conviction is a predicate offense pursuant to the elements clause of the career-offender enhancement in § 4B1.2(a)(1), we must undertake what is called the "categorical approach," which is an analysis comparing the guidelines' definition of "crime of violence" to the elements of the statute under which the defendant was previously convicted. *United States v. Wilson*, 880 F.3d 80, 83 (3d Cir. 2018). "If the statute forming the basis of the defendant's conviction necessarily has" as an element "the use, attempted use, or threatened use of physical force against another person[,]" then that "statute proscribes a predicate crime of violence within the meaning of the [g]uidelines." *United States v. Ramos*, 892 F.3d 599, 606 (3d Cir. 2018).

Under the categorical approach, we "ignore the actual manner in which the defendant committed the prior offense" and "presume that the defendant did so by engaging in no more than 'the minimum conduct criminalized by the state statute.'" *Id.* (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)). But, if the statute of conviction is divisible because it sets out alternative criminal offenses, we may apply what is called the "modified categorical approach." *Id.* at 606-08. Under that approach, we are permitted to look beyond the statute of conviction to documents such as "the

---

other clauses in the "crime of violence" definition. *See* U.S.S.G. § 4B1.2(a)(2) (2015). Thus, we do not need to analyze the government's alternative argument that a conviction under New Jersey's § 2C:12-1(b)(2) categorically qualifies as a crime of violence under the residual clause.

'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judgment to which the defendant assented'" to identify the specific statutory provision that served as the basis for the defendant's earlier conviction. *Id.* at 607 (quoting *United States v. Brown*, 765 F.3d 185, 189-90 (3d Cir. 2014) (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005))). Once the specific provision is identified, the categorical approach is then applied to that provision.

Therefore, whether Abdullah is a career offender requires us to address three questions. *See Ramos*, 892 F.3d at 607. First, is New Jersey's aggravated assault statute divisible? *See id.* Second, if so, can we identify the specific subsection under which Abdullah was convicted? *See id.* Finally, "if so, does that specific aggravated assault offense categorically qualify as a predicate crime of violence under the [g]uidelines?" *Id.* We answer yes to each of those questions and thus conclude that the career-offender enhancement applies.

### 1. *New Jersey's Aggravated Assault Statute Is Divisible*

The parties do not dispute that New Jersey's aggravated assault statute, N.J.S.A. § 2C:12-1(b),[9] is

---

[9] In 2015, § 2C:12-1(b) provided as follows:

Aggravated assault. A person is guilty of aggravated assault if he:

(1) Attempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury; or

(2) Attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon; or

(3) Recklessly causes bodily injury to another with a deadly weapon; or

(4) Knowingly under circumstances manifesting extreme indifference to the value of human life points a firearm, as defined in section 2C:39-1f., at or in the direction of another, whether or not the actor believes it to be loaded; or

(5) Commits a simple assault as defined in subsection a. (1), (2) or (3) of this section upon:

> [subsections omitted – listing classes of persons including, among others, law enforcement officers, emergency responders, educators, and judges]; or

(6) Causes bodily injury to another person while fleeing or attempting to elude a law enforcement officer in violation of subsection b.

of N.J.S.2C:29-2 or while operating a motor vehicle in violation of subsection c. of N.J.S.2C:20-10. Notwithstanding any other provision of law to the contrary, a person shall be strictly liable for a violation of this subsection upon proof of a violation of subsection b. of N.J.S.2C:29-2 or while operating a motor vehicle in violation of subsection c. of N.J.S.2C:20-10 which resulted in bodily injury to another person; or

(7) Attempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury; or

(8) Causes bodily injury by knowingly or purposely starting a fire or causing an explosion in violation of N.J.S.2C:17-1 which results in bodily injury to any emergency services personnel involved in fire suppression activities, rendering emergency medical services resulting from the fire or explosion or rescue operations, or rendering any necessary assistance at the scene of the fire or explosion, including any bodily injury sustained while responding to the scene of a reported fire or explosion. For purposes of this subsection, "emergency services personnel" shall include,

but not be limited to, any paid or volunteer fireman, any person engaged in emergency first-aid or medical services and any law enforcement officer. Notwithstanding any other provision of law to the contrary, a person shall be strictly liable for a violation of this paragraph upon proof of a violation of N.J.S.2C:17-1 which resulted in bodily injury to any emergency services personnel; or

(9) Knowingly, under circumstances manifesting extreme indifference to the value of human life, points or displays a firearm, as defined in subsection f. of N.J.S.2C:39-1, at or in the direction of a law enforcement officer; or

(10) Knowingly points, displays or uses an imitation firearm, as defined in subsection f. of N.J.S.2C:39-1, at or in the direction of a law enforcement officer with the purpose to intimidate, threaten or attempt to put the officer in fear of bodily injury or for any unlawful purpose; or

(11) Uses or activates a laser sighting system or device, or a system or device which, in the manner used, would cause a reasonable person to believe that it is a laser sighting system or device, against a law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority.

divisible. To determine whether "an alternatively phrased statute" is divisible, we ask "whether its listed items are elements or means." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). As we recently explained in another opinion applying the modified categorical approach, "[e]lements are the constituent parts of a criminal offense that a jury must find beyond a reasonable doubt to convict[,]"

As used in this paragraph, "laser sighting system or device" means any system or device that is integrated with or affixed to a firearm and emits a laser light beam that is used to assist in the sight alignment or aiming of the firearm.

Aggravated assault under subsections b. (1) and b. (6) is a crime of the second degree; under subsections b. (2), b. (7), b. (9) and b. (10) is a crime of the third degree; under subsections b. (3) and b. (4) is a crime of the fourth degree; and under subsection b. (5) is a crime of the third degree if the victim suffers bodily injury, otherwise it is a crime of the fourth degree. Aggravated assault under subsection b. (8) is a crime of the third degree if the victim suffers bodily injury; if the victim suffers significant bodily injury or serious bodily injury it is a crime of the second degree. Aggravated assault under subsection b. (11) is a crime of the third degree.

N.J.S.A. § 2C:12-1(b) (2015).

while "[m]eans … are merely the factual ways that a criminal offense can be committed" and do not need to "be found by a jury[.]" *Ramos*, 892 F.3d at 608. A "statute on its face may resolve the issue[,]" such as "[i]f statutory alternatives carry different punishments," which suggests those alternatives are elements, not means. *Mathis*, 136 S. Ct. at 2256.

Here, the New Jersey aggravated assault statute, § 2C:12-1(b), is divisible on its face because it proscribes three alternative degrees of conduct, each subject to different maximum sentences. *See* N.J.S.A. § 2C:12-1(b) (classifying various subsections as crimes of either the second, third, or fourth degree); *id.* § 2C:43-6(a) (providing the different maximum terms of imprisonment for crimes of the second, third, and fourth degree). The second-degree, third-degree, and fourth-degree aggravated assault offenses are thus separable forms of aggravated assault under New Jersey law.

The statute is further divisible into a number of different third-degree aggravated assault offenses. New Jersey used disjunctive language to establish alternative elements of third-degree aggravated assault, including subsection (b)(2).[10] "[E]ach subsection … criminalizes different conduct and sets forth different (albeit overlapping)

---

[10] Aggravated assault under subsections (b)(5) and (b)(8) are crimes of the third degree only if the victim suffered bodily injury. N.J.S.A. § 2C:12-1(b). Also, we note that we are looking to the 2015 statute under which Abdullah was convicted rather than the current statute, which is identical in all material respects for purposes of this case. *Compare id.* § 2C:12-1(b) (2015), *with id.* § 2C:12-1(b) (2017) (adding subsections (b)(12) and (b)(13)).

14

elements that must be proven beyond a reasonable doubt." *Ramos*, 892 F.3d at 609; *see also* New Jersey Model Jury Charges (Criminal), "Aggravated Assault" (N.J.S.A. § 2C:12-1(b)) (detailing the different elements for various aggravated assault subsections). Section 2C:12-1(b) is thus divisible and resort to the modified categorical approach is appropriate.

> 2. *Abdullah Was Convicted of Third-Degree Aggravated Assault with a Deadly Weapon Pursuant to New Jersey's § 2C:12-1(b)(2)*

The parties also agree that the specific third-degree aggravated assault subsection under which Abdullah was convicted is readily identifiable. He pled guilty to third-degree aggravated assault with a deadly weapon in violation of subsection (b)(2) of the statute, as stated in the PSR without objection, confirmed by the judgment of conviction, and admitted by Abdullah through counsel. Under the modified categorical approach, then, it is established with certainty that the offense of conviction was the conduct proscribed by § 2C:12-1(b)(2) of the New Jersey Code.

> 3. *Third-Degree Aggravated Assault with a Deadly Weapon, in Violation of New Jersey's § 2C:12-1(b)(2), Is a Crime of Violence*

The issue thus becomes whether a conviction under § 2C:12-1(b)(2) is categorically a crime of violence under the guidelines. More specifically, we must determine whether that subsection demands proof of "the use, attempted use, or threatened use of physical force against the person of

15

another," as is required by the elements clause of the crime of violence definition in the guidelines. U.S.S.G. § 4B1.2(a)(1). We agree with the District Court that it does.

The term "physical force" has been interpreted by the Supreme Court to mean "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).[11] Thus, under § 4B1.2(a)(1) of the guidelines, a crime of violence is one that has as an element the use, attempted use, or threatened use of force capable of causing physical pain or injury to the person of another. *Chapman*, 866 F.3d 129, 133 (3d Cir. 2017). "That remains true regardless of whether an offender could be convicted under the statute for applying force directly (*e.g.*, hitting a victim with a bat) or applying force indirectly (*e.g.*, throwing a brick at a victim)." *Ramos*, 892 F.3d at 611 (citing *Chapman*, 866 F.3d at 132-33).

Section 2C:12-1(b)(2) forbids "[a]ttempt[ing] to cause or purposely or knowingly caus[ing] bodily injury to another with a deadly weapon[.]" New Jersey law defines "bodily injury" as "physical pain, illness or any impairment of physical condition[,]" N.J.S.A. § 2C:11-1(a), and "deadly weapon" as "any firearm or other weapon, device, instrument, material or substance … known to be[, or fashioned in a way that would lead the victim reasonably to believe it to be,]

---

[11]    The Armed Career Criminal Act's ("ACCA") definition of "violent felony" is sufficiently similar to the guidelines' definition of "crime of violence" that interpretations of one are generally applicable to the other. *Chapman*, 866 F.3d at 132 n.3 (citing *United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009)).

16

capable of producing death or serious bodily injury[,]" *id.* § 2C:11-1(c). The minimum conduct sufficient to convict a defendant under § 2C:12-1(b)(2), then, is conduct attempting to cause any impairment of physical condition with an instrument or substance that, as fashioned, would lead the victim reasonably to believe it was capable of producing serious bodily injury. "As a practical and legal matter, an offender can do so only by attempting to use physical force against another person." *Ramos*, 892 F.3d at 611. In other words, as a matter of course, the minimum conduct that supports a conviction under § 2C:12-1(b)(2) inherently involves proving beyond a reasonable doubt an element of physical force that satisfies the elements clause of the "crime of violence" definition in the guidelines' § 4B1.2(a)(1).

That conclusion comports with our recent decision in *United States v. Ramos*, in which we considered a conviction under a Pennsylvania statute that is practically identical to the New Jersey statute at issue here. 892 F.3d at 610-12. In *Ramos*, we said that a conviction under 18 Pa. Cons. Stat. § 2702(a)(4), which criminalizes "attempt[ing] to cause or intentionally or knowingly caus[ing] bodily injury to another with a deadly weapon[,]" *id.* at 611 (quoting 18 Pa. Cons. Stat. § 2702(a)(4)), "is categorically a crime of violence under the elements clause of the [g]uidelines[,]" *id.* at 612. We noted that that "conclusion is dictated by the Supreme Court's recent decision in *United States v. Castleman*[, 134 S. Ct. 1405 (2014), in which] … the Supreme Court explained that a conviction under a statute proscribing 'the knowing or intentional causation of bodily injury' is a conviction that

17

'necessarily involves the use of physical force.'[12] *Id.* at 611-12 (quoting *Castleman*, 134 S. Ct. at 1414). That explanation in *Castleman* was enough for us to conclude in *Ramos* that "aggravated assault with a deadly weapon, which similarly requires proving the attempted, knowing, or intentional causation of bodily injury, is categorically a violent crime." *Id.* at 612.

Abdullah makes several arguments aimed at avoiding that logical conclusion. First, he contends that, because the New Jersey legislature has distinguished between "bodily injury" and "use of force" in its criminal statutes, those two phrases must be understood as mutually exclusive. (Opening Br. at 10.) Specifically, because New Jersey makes a person

---

[12] Although we have recently questioned whether the Supreme Court's broad language in that regard holds true in all scenarios, *see United States v. Mayo*, 901 F.3d 218, __ , slip op. at 221-22 (3d Cir., Aug. 22, 2018) (citing and quoting *United States v. Middleton*, 883 F.3d 485, 491 (4th Cir. 2018) for the proposition that "*Castleman* does not support the [g]overnment's argument that any form of bodily injury requires violent force"), it certainly holds true and is binding upon us in situations expressly considered by the Supreme Court in *Castleman* (*i.e.*, bodily injury resulting from a situation necessarily involving the affirmative use, attempted use, or threatened use of physical force). Although *Castleman* did not consider "[w]hether or not the causation of bodily injury necessarily entails violent force" because it only addressed common-law force, *Castleman*, 134 S. Ct. at 1413, we think the "deadly weapon" requirement in § 2C:12-1(b)(2) is enough to bridge any potential gap that may give cause for concern.

18

"guilty of robbery if, in the course of committing a theft, he … [i]nflicts bodily injury *or* uses force upon another[,]" in Chapter 15 of its criminal code, its use of the words "bodily injury" in Chapter 12 was a purposeful attempt to exclude the use of force from the definition of third-degree aggravated assault with a deadly weapon. (Opening Br. at 10 (quoting N.J.S.A. § 2C:15-1(a)(1))). That speculation about legislative intent, however, fails to undercut the force of our reasoning in *Ramos* that the causation of bodily injury, or threat thereof, with a deadly weapon necessarily entails a use, attempted use, or threatened use of violent physical force. *Ramos*, 892 F.3d at 612.

Second, Abdullah cites a number of non-precedential district court cases for the argument that "'bodily injury,' as compared to 'serious bodily injury' and 'significant bodily injury'," is insufficient to satisfy the physical force required in the definition of "crime of violence" under the guidelines. (Opening Br. at 13.) Relying particularly on *United States v. Knight*, No. 15-004, 2016 WL 223701 (D.N.J. Jan. 19, 2016), he contends that "mere 'physical discomfort, or a sensation caused by a kick' is sufficient bodily injury for purposes of proving assault under the New Jersey statute[, but is insufficient] to qualify as 'serious bodily injury' under the federal generic definition." *Id.* at *6 n.6. Assuming without deciding that that were true, Abdullah ignores that the court in *Knight* was analyzing aggravated assault under a different provision, § 2C:12-1(b)(5)(a), and that the bodily injury referenced in § 2C:12-1(b)(2), the provision that is at issue here, must have been caused or attempted "with a deadly weapon[.]" That kind of injury naturally involves the use, attempted use, or threat to use the type of violent physical force contemplated by the guidelines' definition of "crime of

19

violence." *See Ramos*, 892 F.3d at 612 (noting that it stretches the imagination to think "a person could knowingly or intentionally injure, or attempt to injure, another person with a deadly weapon without engaging in at least some affirmative, forceful conduct").

Finally, Abdullah argues that the conclusion in *Ramos* with respect to aggravated assault with a deadly weapon under 18 Pa. Cons. Stat. § 2702(a)(4) cannot be extended to the New Jersey statutory provision at issue here. He says that, "whereas Pennsylvania's definition of a deadly weapon is strictly *subjective to the perpetrator* …, New Jersey's 'deadly weapon' can alternatively be *subjective to the victim*[.]" (Opening Br. at 15-16.) He points to no authority, though, and we can find none, suggesting that merely because one takes the perspective of the victim rather than of the defendant, the use of a deadly weapon to cause or attempt to cause bodily injury does not involve at least a threat of violent physical force. *Cf. Damaso-Mendoza v. Holder*, 653 F.3d 1245, 1250 (10th Cir. 2011) ("There is a threatened use of physical force against the person … of another whether the object used by the perpetrator is a true deadly weapon or just looks like one." (citation, emphasis, and internal quotation marks omitted)). To the extent Abdullah argues that the New Jersey statute criminalizes conduct using a *mens rea* requirement less than that necessary for generic aggravated assault because the focus is placed on the victim's state of mind rather than the defendant's state of mind with respect to the deadly weapon element, we disagree. Section 2C:12-1(b)(2) requires proving that the defendant purposely or knowingly used an instrument or substance in a way that "would lead the victim reasonably to believe it to be capable

20

of producing death or serious bodily injury[.]"[13]   N.J.S.A. § 2C:11-1(c).

At the end of the day, "it is [still] nearly impossible to conceive of a scenario in which a person could knowingly or intentionally injure, or attempt to injure, another person with a deadly weapon without engaging in at least some affirmative, forceful conduct." *Ramos*, 892 F.3d at 612.  We therefore hold that a conviction for third-degree aggravated assault with a deadly weapon under New Jersey law, § 2C:12-1(b)(2), is categorically a crime of violence under the elements clause of the guidelines.[14]   That means Abdullah's

---

[13]   Abdullah also relies on the decision of the United States Court of Appeals for the Fifth Circuit in *United States v. Martinez-Flores*, 720 F.3d 293 (5th Cir. 2013), for its "detailed and relevant analysis of the New Jersey legislature's intent in drafting its aggravated assault statute." (Opening Br. at 19.)   That case is inapposite because it addressed a different aggravated assault provision (*i.e.*, N.J.S.A. § 2C:12-1(b)(7)), under a different clause (*i.e.*, the enumerated offenses clause), of a different guideline (*i.e.*, U.S.S.G. § 2L1.2). *Martinez-Flores*, 720 F.3d at 295, 300.  Nor is his reliance on our decision in *United States v. Remoi*, 404 F.3d 789 (3d Cir. 2005), helpful.  In that case, we addressed a provision in New Jersey's sexual assault statute, N.J.S.A. § 2C:14-2(c)(2), *Remoi*, 404 F.3d at 793, not a provision in New Jersey's aggravated assault statute, let alone one that involves the use of a deadly weapon.

[14]   Because we do not conclude that N.J.S.A. § 2C:12-1(b)(2) is ambiguous, we need not consider Abdullah's argument that the rule of lenity applies. *See United States v.*

21

conviction under that statute qualifies as a crime of violence and the career-offender enhancement is applicable. We thus affirm the District Court's decision to apply it.

Abdullah also argues that the District Court erred when it found by a preponderance of the evidence that at least 700 grams of heroin were attributable to him, which set his base offense level at 28, and that he was an organizer or leader of the drug-trafficking organization, which raised his offense level by four points pursuant to U.S.S.G. § 3B1.1(a). Those issues are moot, however, because we have concluded that the career-offender enhancement applies. Even if four points were subtracted from his offense level due to an alleged error in calculating the drug quantity and another four were subtracted for misapplication of the organizer-or-leader enhancement, Abdullah's final offense level would remain unaffected because the career-offender enhancement requires that his minimum offense level be 34. *See* U.S.S.G. § 4B1.1(b) (instructing that a career offender facing a statutory maximum term of imprisonment of 25 years or more must be given an offense level of at least 34). We therefore need not consider those arguments. *See PAAC v. Rizzo*, 502 F.2d 306, 309 (3d Cir. 1974) (noting that resolution of some issues in an appeal can moot other issues that were raised); *see also Wilson*, 880 F.3d at 88 n.11 (stating that the threat-of-death sentencing enhancement did not need to be

*Savani*, 733 F.3d 56, 66 (3d Cir. 2013) (stating that the rule of lenity applies to the sentencing guidelines only when "there is a 'grievous ambiguity or uncertainty in the statute'" (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010))).

considered in light of the holding with respect to the career-offender enhancement).

## III.    CONCLUSION

For the foregoing reasons, we will affirm the sentence imposed by the District Court.