**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1810
_____

UNITED STATES OF AMERICA

v.

SHAUN CHAPMAN,
                                        Appellant
_____

APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Criminal Action No. 4-15-cr-00094-001)
District Judge: Honorable Christopher C. Conner,
Chief Judge
_____

Argued November 4, 2016
_____

Before: JORDAN, GREENAWAY, JR., and RENDELL,
*Circuit Judges*.

(Filed: August 4, 2017)

James V. Wade, Esq.
Ronald A. Krauss, Esq. [ARGUED]
Office of the Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101

     *Attorneys for Appellant*

David J. Hickton, Esq.
Rebecca Ross Haywood, Esq. [ARGUED]
Office of the United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

     *Attorneys for Appellee*

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Shaun Chapman appeals the District Court's application of the career offender enhancement to his sentence calculation under the United States Sentencing Guidelines (the "Guidelines"). Chapman contends that his convictions pursuant to 18 U.S.C. § 876(c) do not qualify as crimes of violence. This appeal requires us to determine whether § 876(c)—which proscribes mailing a

communication containing a threat to injure the person of the addressee or of another —is a crime of violence, as defined by the Guidelines. Because we agree with the District Court that Chapman's convictions are crimes of violence within the meaning of the Guidelines, we will affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

While serving a sentence in state prison in 2006, Chapman wrote a letter—eventually intercepted by prison staff—threatening to kill President George W. Bush. Shortly after, in an interview with Secret Service agents, Chapman admitted that he wanted to kill the President and went on to make additional threats. A few months later, a federal grand jury returned an indictment charging Chapman with threatening the President, in violation of 18 U.S.C. § 871(a). Chapman pled guilty and was sentenced to 30 months' imprisonment.

In 2007, shortly after his sentencing, Chapman mailed a letter to a federal district court judge, which contained threats against the judge and other court staff. This time, a federal grand jury returned an indictment charging Chapman with mailing a threatening communication, in violation of 18 U.S.C. § 876(c). Chapman was sentenced to an additional 48 months' imprisonment.

Chapman was released from federal custody in April 2014. Soon after, he violated the terms of his supervised release and received a sentence of 11 months' imprisonment. While serving this sentence, Chapman mailed a letter to the

3

U.S. Attorney's Office for the Middle District of Pennsylvania. The letter contained threats against the federal prosecutor who handled Chapman's revocation proceedings, as well as the probation officer involved with Chapman's case. These actions put Chapman in his current predicament.

## B. Procedural History

In May 2015, a federal grand jury returned an indictment on one count of mailing a threatening communication, in violation of 18 U.S.C. § 876(c). Chapman pled guilty to the one count, without a plea agreement.

At the March 2016 sentencing hearing, the District Court considered Chapman's presentence investigation report ("PSR"). Based on the PSR, the government recommended that Chapman receive the career offender enhancement because his "instant offense of conviction [was] a felony that is . . . a crime of violence" and he "ha[d] at least two prior felony convictions of . . . a crime of violence." U.S. Sentencing Guidelines Manual § 4B1.1(a) (U.S. Sentencing Comm'n 2017) [hereinafter Guidelines Manual]. The government also noted that other circuits had adopted the same position as to § 876(c). Meanwhile, Chapman argued that § 876(c) is not a crime of violence because it does not require "violent physical force," and therefore it does not "have as an element the use, attempted use, or threaten[ed] use of force." App. 49–52.

The District Court rejected Chapman's argument and concluded that a conviction under § 876(c) is a crime of violence. The District Court noted that the "express language and the semantic structure of [§] 876(c) refute[d]" Chapman's argument. App. 53. Applying the career offender

4

enhancement, the District Court sentenced Chapman to 70 months' imprisonment, which is at the bottom of the Guidelines range. This timely appeal followed.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. "Whether a . . . conviction constitutes a crime of violence for purposes of the career offender Guideline is a question of law over which we exercise plenary review." *United States v. Brown*, 765 F.3d 185, 188 (3d Cir. 2014) (internal quotation marks omitted).

## III.    ANALYSIS

Chapman argues that his conviction here and a previous conviction do not qualify as crimes of violence under the Guidelines. We disagree.[1]

---

[1] The thrust of Chapman's argument focuses on whether 18 U.S.C. § 876(c) is a crime of violence; whether 18 U.S.C. § 871(a)—which punishes mailing "any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States"—is a crime of violence is left to a footnote. Appellant's Br. at 9 n.5 (abstaining from discussion of whether § 871(a) is a crime of violence but noting that the § 876(c) analysis "would seem to apply"); *see also* Sentencing Memorandum, *United States v. Chapman*, No. 15-cr-094 (M.D. Pa. Feb. 22, 2016), ECF No. 55 at 6 n.3. We agree that the analysis is the same, and will therefore affirm the District Court's holding that a violation of § 871(a) is a crime of violence. *See United States v. Santos*, 131 F.3d

5

Under the Guidelines, one is designated a career offender if:

> (1) [he] was at least eighteen years old at the time [he] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) [he] has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Guidelines Manual § 4B1.1(a). Both the instant conviction and the previous conviction at issue here were for violating 18 U.S.C. § 876(c), which prohibits mailing "any threat to kidnap any person or any threat to injure the person of the addressee or of another."

To determine whether Chapman's convictions under § 876(c) could serve as career offender predicate offenses, we will first examine the definition of "crime of violence," as defined by Guidelines § 4B1.2(a)(1). Then, we will compare this definition to the elements of the statute forming the basis of Chapman's convictions.

---

16, 21 (1st Cir. 1997) (holding that § 871(a) "has as an element the [] threatened use of physical force against another person" (internal quotation marks omitted)); *United States v. McCaleb*, 908 F.2d 176, 178 (7th Cir. 1990) ("No semantical contrivance can avoid the simple conclusion that the conduct involved in [§ 871(a)] is . . . the 'threatened use of physical force against the person [] of another.'").

### A. Definition of "Crime of Violence," Pursuant to the Career Offender Enhancement

The Guidelines define "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." Guidelines Manual § 4B1.2(a)(1).[2] It bears discussing the meaning of "use" and "physical force."

The word "use" means "the intentional employment of . . . force, generally to obtain some end." *Tran v. Gonzales*, 414 F.3d 464, 470 (3d Cir. 2005). "[T]he word 'use' conveys the idea that the thing used . . . has been made the user's instrument." *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014) (some internal quotation marks omitted).

Turning to "physical force," the Supreme Court has defined this phrase to mean "*violent* force," in other words, "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).[3] It is important to note that the use of physical force

---

[2] Chapman does not dispute that he was convicted of offenses that are punishable by imprisonment for a term exceeding one year.

[3] Although *Johnson* involved a sentencing enhancement under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), rather than the career offender Guideline, *Johnson* still binds our analysis. *United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009) ("[T]he definition of a violent felony under the ACCA is sufficiently similar to the

does not require that the person employing force *directly* apply harm to—*i.e.*, strike—the victim. We derive this principle from *United States v. Castleman*, where the Supreme Court rejected the contention that knowingly or intentionally poisoning another person does not constitute a use of force:

> The "use of force" in [Respondent's] example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [Respondent's] logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

134 S. Ct. at 1415.

We understand that the Court in *Castleman* applied the common-law definition of "force"—which is satisfied by offensive touching—to the meaning of "physical force," as used in "misdemeanor crime of violence," and the sentencing enhancement in this case requires us to analyze the meaning of "physical force," as used in felony "crime of violence." Chapman argues that *Castleman* lacks persuasive value for this reason.

---

definition of a crime of violence under the Sentencing Guidelines [so] that authority interpreting one is generally applied to the other . . . ." (footnote omitted)).

8

But Chapman fails to sufficiently explain why *Castleman*'s analysis should not apply here. If employing a device to cause harm indirectly (*e.g.*, pulling the trigger on a gun) meets the definition of "physical force," as used in misdemeanor crime of violence, then it stands to reason that the same action meets the definition of "physical force," as used in felony crime of violence. Otherwise, § 4B1.1(a)(1) would only apply to offenses that explicitly require a punch, kick, or some other form of touching that is more than offensive. We therefore find that the "use" of "physical force," as used in § 4B1.2(a)(1), involves the intentional employment of something capable of causing physical pain or injury to another person, regardless of whether the perpetrator struck the victim's body.[4]

---

[4] A number of other circuits have similarly extended *Castleman*'s analysis to apply to felony "crime of violence," as used in the ACCA, Guidelines § 4B1.2, and 18 U.S.C. § 924(c)(3). *See United States v. Winston*, 845 F.3d 876, 878 (8th Cir.), *cert denied*, 137 S. Ct. 2201 (2017) (holding that a statute punishing battery—which has as part of an element "causes physical injury"—is a crime of violence); *United States v. Redrick*, 841 F.3d 478, 484 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 2204 (2017) (holding that robbery with a deadly weapon—even if the weapon was "poison," an "open flame," or "lethal bacteria"—is a crime of violence); *United States v. Hill*, 832 F.3d 135, 142–43 (2d Cir. 2016) (holding that Hobbs Act robbery—which is accomplished by means of putting the victim in "fear of injury"—is a crime of violence); *United States v. Waters*, 823 F.3d 1062, 1066 (7th Cir.), *cert. denied*, 137 S. Ct. 569 (2016) (holding that a statute punishing domestic battery—which has as part of an element

9

**B.      The Framework for Comparing Chapman's Convictions to the Definition of "Crime of Violence"**

To determine whether a conviction qualifies as a crime of violence, courts use the categorical approach, which calls for a comparison of "the elements of the statute forming the basis of the defendant's conviction" with the definition of crime of violence. *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). Under this approach, we "'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offense[], and *not* 'to the particular facts underlying th[e] conviction[].'" *Id.* at 2283 (emphasis in original) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

In the context of determining whether a conviction is a crime of violence, as defined by § 4B1.2(a)(1), we ask whether "the use or threat of physical force [against the person of another]" is an element of the offense. *Brown*, 765 F.3d at 189 (alteration in original) (internal quotation marks omitted). If the statute has this element, or "defines the crime

─────────────────────

"causes bodily harm"—is a crime of violence); *but see United States v. McNeal*, 818 F.3d 141, 156 n.10 (4th Cir.), *cert. denied*, 137 S. Ct. 164 (2016) (observing that *Castleman* does not "abrogate[] the distinction . . . between the use of force and the causation of injury"); *Whyte v. Lynch*, 807 F.3d 463, 471 (1st Cir. 2015) (holding that a statute punishing assault—which has as part of an element "causes [physical] injury"—is not a crime of violence); *United States v. Gatson*, 776 F.3d 405, 411 (6th Cir. 2015) (limiting the holding of *Castleman* to the context of "misdemeanor crime of domestic violence").

more narrowly," then the conviction can serve as a predicate offense. *See Descamps*, 133 S. Ct. at 2283. But if the "statute sweeps more broadly than the [Guidelines-defined crime of violence], a conviction under [that statute] is not a career offender predicate even if the defendant actually committed the offense in a way that involved the use (or threatened use) of physical force against another." *Brown*, 765 F.3d at 189 (internal quotation marks omitted).

Before we launch into the necessary comparison, there is an additional step to take because the statute that formed Chapman's convictions, 18 U.S.C. § 876(c), is a divisible statute, meaning it "comprises multiple, alternative versions of the crime." *Descamps*, 133 S. Ct. at 2284.[5] Those versions are: (1) knowingly mailing any communication containing any threat to kidnap any person; and (2) knowingly mailing any communication containing any threat to injure the person of the addressee or of another. To determine which version was the basis of Chapman's convictions, we can consider "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"—this is known as the modified categorical approach. *Shepard v. United States*, 544 U.S. 13, 16 (2005).

---

[5] On the other hand, a statute is indivisible if it sets out a single set of elements to define a single crime. *Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016). An example of an indivisible statute: a statute that criminalizes "the entry of a premises with the intent to steal." By contrast, that statute would be divisible if "entry" is swapped with "lawful entry, or in the alternative, unlawful entry."

11

Here, the indictment charged Chapman with mailing a communication containing threats "to injure" two individuals, so we turn toward the threat to injure version of § 876(c).[6] This version has two elements: (1) the defendant knowingly mailed a threatening communication; and (2) the communication contained a threat to injure the person of the addressee or another.

### C. Comparing the "Threat to Injure" Version of § 876(c) to the Definition of "Crime of Violence"

Next, we examine the element "threat to injure the person of the addressee or of another." At the outset, it is worth mentioning that the plain language of this element closely tracks Guidelines § 4B1.2(a)(1)'s requirement of "threatened use of physical force against the person of another." Dictionaries support this point. Webster's Third New International Dictionary defines "injure" as "to inflict bodily hurt on." Webster's Third New International Dictionary 1164 (1993). Black's Law Dictionary defines "injure" as "[t]o do harm to, damage, or impair. To hurt or wound, as the person." Black's Law Dictionary 785 (6th ed. 1990). And "person," when followed by "of the addressee or

---

[6] Our application of the modified categorical approach does not conflict with our holding in *United States v. Muniz*, 637 F. App'x 65 (3d Cir. 2016) (unpublished opinion). There, a panel of this Court addressed whether the "threat to injure" version of § 876(c) was divisible by its *mens rea*, concluding that it was not. *Id.* at 68. Thus, *Muniz* did not address whether § 876(c) is divisible because it provides for two alternative versions of a crime.

12

of another," should be read to mean "the body of a human being as distinguished from the mind." Webster's Third New International Dictionary 1686 (1993). For these reasons, we conclude that knowingly mailing a communication threatening to injure the person of the addressee or of another necessarily threatens the use of physical force. Thus, § 876(c) qualifies as a crime of violence, as defined by Guidelines § 4B1.2(a)(1).[7]

Chapman's counterargument can be summarized as follows: "The threat of physically injuring [a] [v]ictim, even [the] threat of serious bodily injury or death, does not necessarily require a threat to use violent force against the person of [the] [v]ictim." Appellant's Br. at 12 (internal quotation marks omitted). For support, he points to a body of

---

[7] We are not the first court to conclude that § 876(c) is a felony crime of violence. The Fourth, Fifth, Eighth, and Ninth Circuits have all reached the same conclusion. *United States v. Guevara*, 408 F.3d 252, 259–60 (5th Cir. 2005) (concluding that § 876(c)—violated by defendant mailing a letter to a federal judge containing a threat and a substance mimicking anthrax (also known as an "anthrax hoax")—is a crime of violence); *United States v. De La Fuente*, 353 F.3d 766, 770–71 (9th Cir. 2003) (same); *United States v. Weddle*, 30 F.3d 532, 538 n.1 (4th Cir. 1994) (concluding that § 876(c) —violated by defendant mailing a threatening letter to a man having an affair with defendant's wife—is a crime of violence); *United States v. Left Hand Bull*, 901 F.2d 647, 649 (8th Cir. 1990) (concluding § 876(c) —violated by defendant mailing a threatening letter to estranged wife—is a crime of violence).

law from other circuits addressing criminal threat statutes[8] and presents four imaginative hypotheticals. In essence, Chapman argues that the threatened use of *physical force* requires striking a person; thus, indirect applications of harm

[8] Appellant's Br. at 12–13 (citing *United States v. Torres-Miguel*, 701 F.3d 165, 168 (4th Cir. 2012); *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010); *United States v. Perez-Vargas*, 414 F.3d 1282, 1287 (10th Cir. 2005)).

We are mindful that courts tasked with determining whether violations of state criminal threat statutes constitute crimes of violence have distinguished between crimes that require the "use of force" and those that merely require a "result of injury." *See*, *e.g.*, *Torres-Miguel*, 701 F.3d at 167, 169 (holding that an offense accomplished by "willfully threaten[ing] to commit a crime which *will result* in death or great bodily injury" did not "contain an element requiring the use or threatened use of physical force" (first quote from Cal. Penal Code § 422(a))); *Perez-Vargas*, 414 F.3d at 1286–87 (holding that an offense accomplished by "knowingly or recklessly *caus[ing] bodily injury* to another person or with criminal negligence . . . *caus[ing] bodily injury* to another person by means of a deadly weapon" does not "necessarily include the use or threatened use of 'physical force'" (first quote from Colo Rev. Stat. Ann. § 18-3-204)). This distinction is inapposite to our analysis because of the principle we derive from *Castleman*.

Additionally, Chapman's comparison fails to the extent he compares 18 U.S.C. § 876(c) to a statute with a *mens rea* that is less than "knowingly."

fall outside of the Guidelines' ambit.[9]  We disagree for two reasons.

First, the Supreme Court rejected a similar argument in *Castleman*.  *See* 134 S. Ct. at 1415.  And taken to its logical conclusion, Chapman's argument allows no room for murder or voluntary manslaughter to qualify as crimes of violence because both offenses can be committed without the perpetrator striking the victim.  This would substantially undermine Congress's goal of imposing "substantial prison terms" on "repeat violent offenders."  Guidelines Manual § 4B1.1 cmt. background.

Second, Chapman mistakenly assumes that there is a minimum quantum of force necessary to satisfy *Johnson*'s definition of "physical force."  The Supreme Court in *Johnson* held that the "slightest offensive touching" does not qualify as "physical force"—that is it.  *See* 559 U.S. at 139; *United States v. Hill*, 832 F.3d 135, 142 (2d Cir. 2016) (determining that the Court in *Johnson* did not construe the ACCA "to require that a particular quantum of force be employed or threatened to satisfy its physical force requirement").  We can be sure that a threat to harm or to

---

[9] At oral argument, Chapman's counsel argued for the first time that reputational harm could satisfy the "threat to injure the person" of the victim element of § 876(c).  This was another attempt to demonstrate that this element sweeps broader than the Guidelines definition of "crime of violence."  However, we consider this argument waived and abandoned because Chapman did "not pursue[] [it] in the argument section of [his] brief."  *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993).

wound the body of another is not akin to a threat to touch offensively.

Accordingly, 18 U.S.C. § 876(c), which requires knowingly mailing a communication containing a threat to injure the person of the addressee or of another, falls squarely within the career offender enhancement's definition of "crime of violence." We therefore conclude that the District Court correctly applied the career offender enhancement to Chapman's Guidelines range.

## IV.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of conviction of the District Court.

*United States v. Shaun Chapman,* No. 16-1810
JORDAN, *Circuit Judge*, concurring.

I agree with the well-reasoned opinion of my colleagues in this case but write separately to express dismay at the ever-expanding application of the categorical approach. Recently, our Court was asked to apply the categorical approach to contemporaneous convictions obtained in a jury trial over which the sentencing judge himself had presided. *United States v. Robinson*, 844 F.3d 137, 141 (3d Cir. 2016). Although we declined, *id.*, that request indicates the kudzu quality of the categorical approach, which seems to be always enlarging its territory. This case does not present a novel expansion of the doctrine, but it does highlight a consistently troubling feature: its requirement that judges ignore the real world. To appreciate that problem, one need only read the excellent concurring opinions of Judge J. Harvie Wilkinson III in *United States v. Doctor*, 842 F.3d 306, 312-19 (4th Cir. 2016), and Judge Sandra L. Lynch in *United States v. Faust*, 853 F.3d 39, 60-61 (1st Cir. 2017). My concurrence in this case is just a "me too" statement of concern.

The categorical approach to assessing the character of previous criminal convictions began with the Supreme Court's effort to apply the sentencing enhancement called for by the Armed Career Criminal Act ("ACCA" or "the Act"). Under the Act, criminal defendants are subject to greater penalties based on their previous criminal convictions for violent felonies or serious drug offenses, regardless of whether those predicate offenses were in violation of state or federal law. But, as the Supreme Court observed in *Taylor v. United States*, "the criminal codes of the States define [crimes] in many different ways." 495 U.S. 575, 580 (1990).

1

To avoid inconsistent application of the ACCA based on those variances, the Court read into the Act a "categorical approach" to the designation of predicate offenses, whereby the elements of a relevant state statute are compared to the elements of a generic version of the crime as it stood under common law. *Id.* at 599. The *Taylor* Court explicitly directed that its approach left no room for courts to look "to the particular facts underlying [the] convictions." *Id.* at 600.

In the context of a federal court examining state court convictions, that approach has intuitive appeal, particularly when a state conviction is old and lacks back-up records to provide historical detail. But, in practice, the approach has often made the job of district courts more difficult. *See, e.g.*, *United States v. Perez-Silvan*, __F.3d__, No. 16-10177, 2017 WL 2784971, at *7 (9th Cir. June 28, 2017) (Owens, J., concurring) (referring to "sentencing adventures more complicated than reconstructing the Staff of Ra in the Map Room to locate the Well of the Souls"); *United States v. Mayer*, 162 F. Supp. 3d 1080, 1095 (D. Or. 2016) (labeling the approach "a Byzantine analytical framework"); *Murray v. United States*, No. 15-cv-5720 (RJB), 2015 WL 7313882, at *5 (W.D. Wash. Nov. 19, 2015) (describing the approach as "a hopeless tangle"). Rather than making things more straightforward, the categorical approach has caused sentencing judges to "simply swap[] factual inquiries for an endless gauntlet of abstract legal questions." *Doctor*, 842 F.3d at 313 (Wilkinson, J., concurring). And operating at that level of abstraction "can lead courts to reach counterintuitive" and arbitrary results. *Faust*, 853 F.3d at 61 (Lynch, J., concurring).

Some work is needed to bring the categorical approach back in line with its original goal – applying sentencing enhancements in a sensible and administratively feasible fashion. I believe that the first step to achieving that goal is to permit judges, in their discretion, to rely on the facts underlying past convictions when those facts are readily ascertainable from reliable government records. *See Doctor*, 842 F.3d at 315 (Wilkinson, J., concurring) ("District Courts should be free to apply [the categorical approach] as the default inquiry, but should retain the discretion to consider the defendant's actual conduct when it can be clearly derived from the record."). In the absence of some reform, several problems will persist.

First, the categorical approach is often an impediment to uniformity. *See Mathis v. United States,* 136 S. Ct. 2243, 2267-88 (2016) (Alito, J., dissenting) (recognizing that the Majority decision disqualifies burglary convictions in many states from counting as predicate offenses even though "Congress indisputably wanted burglary to count" for all states). The Supreme Court identified the categorical approach as an answer to the problem of inconsistent sentences, but it can lead to the opposite outcome. For example, two defendants who, in their past, independently committed identical criminal acts in two different states and have essentially the same criminal history will find that the applicability of the ACCA to their current cases depends not on their past criminal conduct but on the phrasing of the different state criminal statutes. This "arbitrary and inequitable result[] … could not have been Congress' intent[.]" *Mathis,* 136 S. Ct. at 2258 (Kennedy, J., concurring).

Second, the categorical approach has interfered with the ability of courts to ensure that repeat, violent offenders receive the most severe sentences. Judge Wilkinson has described how, purely as a function of the categorical approach, repeat offenders often avoid sentencing enhancements for their violent crimes. *See Doctor*, 842 F.3d at 315 (Wilkinson, J. concurring) (listing ten cases in which violent acts did not categorically qualify as violent felonies). Judge Lynch focused on a telling example of how the categorical approach forces judges into an alternative reality, dictating that assault and battery on a police officer, despite common sense and what "[t]he average person on the street would ordinarily think[,]" is not categorized as a crime of violence. *Faust*, 853 F.3d at 60 (Lynch, J., concurring). Again, "[i]t could not have been Congress' intent for a career offender to escape his statutorily mandated punishment when the record makes it clear beyond any possible doubt that he committed [an enumerated felony]." *Mathis*, 136 S. Ct. at 2258 (Kennedy, J., concurring) (internal quotation marks and alteration omitted).

Third, the categorical approach often asks judges to feign amnesia. It requires them to "peek" at portions of the factual record to determine under which division of a statute an offender's past conviction falls. *Id.* at 2256 (majority opinion) (internal quotation marks omitted). When that is done, a different label – the "modified categorical approach" – gets hung on the process, and things are better for that brief exposure to reality. But, after seeing that information, a judge is then asked to erase those facts from his or her mind in deciding whether the conviction is a violent felony or serious drug offense. *Id.* at 2256-57. The judge must ignore facts already known and instead proceed with eyes shut.

4

Finally, the categorical approach has led to unusual questions of statutory interpretation which have in turn led to even more unusual results. The most troubling example is the Supreme Court's declaration that the "residual clause" of the ACCA is unconstitutional. That clause was a catch-all which provided that "any crime punishable by imprisonment for a term exceeding one year" that "otherwise involves conduct that presents a serious potential risk of physical injury to another" should be counted as a violent felony. 18 U.S.C. § 924(e)(2)(B)(ii). In *Johnson v. United States*, the Court held that the clause was unconstitutionally vague because of the near impossibility of rationally and consistently applying it under the categorical approach. 135 S. Ct. 2551, 2559-60 (2015). Over a forceful dissent, the Majority maintained that application of the categorical approach was in line with Congressional intent. *Id.* at 2561-62. So the Court struck down the clause as unconstitutional, rather than reconsidering its own analytical construct, the categorical approach. It is not immediately obvious why the judiciary's difficulty in making the categorical approach work should lead to the conclusion that Congress and the President strayed from the Constitution in enacting the ACCA.

Because the categorical approach often fails to achieve the goal it was designed for, and because it is a purely judge-made doctrine, I join those who have urged that it be given reconsideration. *See Faust*, 853 F.3d at 60 (Lynch, J., concurring); *Doctor*, 842 F.3d at 315 (Wilkinson, J., concurring). Even a modest fix could remedy the most troubling results: where the facts concerning a previous conviction are beyond fair dispute, a judge should be permitted to consider those facts in applying sentencing

5

enhancements.[1]  In this case, for instance, the analysis should have been no more complicated than this: First, the sentencing enhancement provision defines a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that … has as an element the use, attempted use, or threatened use of physical force against the person of another[,]" U.S.S.G. § 4B1.2(a)(1); second, Chapman was convicted of a crime requiring a "threat to injure [a] person[,]" 18 U.S.C. § 876(c); and third, the record shows unequivocally that he did threaten to injure a person.

Forcing judges to close their eyes to what is obvious promotes inefficiency and guarantees difficult-to-explain sentences.  In the easy cases, we should let our sentencing judges work with their eyes open.

---

[1] If the facts are not clear, thereby creating a legitimate Sixth Amendment argument, *see Shepard v. United States*, 544 U.S. 13, 24-25 (2005), there is a logical basis for insisting on the categorical approach. *See United States v. Robinson*, 844 F.3d 137, 142 (3d Cir. 2016) (recognizing that developments in Sixth Amendment jurisprudence "provide[] an additional reason for avoiding factual inquiries").