**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2709
_____

UNITED STATES OF AMERICA

v.

SHAWN SHANNON QUINNONES,
a/k/a Michael Murphy,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Criminal No. 5-18-cr-00220-001)
District Judge:  Hon. Edward G. Smith
_____

Argued October 5, 2021
_____

Before:  SHWARTZ, RESTREPO, and SCIRICA, <u>Circuit
Judges</u>.

(Filed: October 26, 2021)

Thomas M. Zaleski
Robert A. Zauzmer [ARGUED]
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Counsel for Appellee

Abigail E. Horn [ARGUED]
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

Counsel for Defendant-Appellant
_____

OPINION
_____

SHWARTZ, Circuit Judge.

In this case, we are required to determine whether assault by a prisoner under the portion of 18 Pa. Cons. Stat. § 2703 that criminalizes "caus[ing] another to come into contact with [bodily] fluid" when the prisoner knew or should have known the fluid came from someone with a communicable disease is a "crime of violence" under the United States Sentencing Guidelines' career offender provision, U.S.S.G. § 4B1.1. We conclude it is not.

2

I

Shawn Shannon Quinnones pleaded guilty to two counts of armed bank robbery in violation of 18 U.S.C. §§ 2113(a), (d) and § 2. She also stipulated that her commission of an armed robbery of a Family Dollar store should be treated at sentencing as if it were a third count of conviction. The United States Probation Office prepared a Presentence Investigation Report ("PSR") detailing Quinnones' criminal history and recommending that she be sentenced as a career offender under U.S.S.G. § 4B1.1 because her crime of conviction for armed bank robbery and her four prior convictions for assault by a prisoner in violation of 18 Pa. Cons. Stat. § 2703 were all "crimes of violence."

Quinnones objected to the career offender designation, arguing that three of her § 2703 convictions did not qualify as crimes of violence.[1] The District Court disagreed, applied the career offender designation, departed downward from the Guidelines range of 188-235 months, and sentenced Quinnones to 132 months' imprisonment, followed by five years' supervised release, and $8,058 in restitution.

Quinnones appeals.

---

[1] In her sentencing memorandum, Quinnones did not object to counting as a qualifying offense a 1997 conviction for violating § 2703.

3

## II[2]

### A

Quinnones argues that her convictions under § 2703 are not "crimes of violence" as defined by U.S.S.G. § 4B1.2, and, therefore, the District Court erred by sentencing her as a career offender. To evaluate this contention, we first set forth the definition of "crime of violence" under the Sentencing Guidelines. We then identify the elements of the statute of conviction, here § 2703. Thereafter, we compare those elements to the definition of "crime of violence" to determine whether § 2703 fits the definition.

### B

A defendant whose crime of conviction is a "crime of violence" or a "controlled substance offense" and who has at least two prior convictions for such offenses is subject to sentencing as a career offender under U.S.S.G. § 4B1.1. As relevant here, the career offender provision defines a "crime of violence" as any felony that "has as an element the use,

---

[2] The District Court had jurisdiction under 28 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review purely legal questions, such as whether an offense qualifies as a crime of violence under the Sentencing Guidelines, de novo. United States v. Henderson, 841 F.3d 623, 626 (3d Cir. 2016).

4

attempted use, or threatened use of physical force."[3] U.S.S.G. § 4B1.2(a)(1).

To further define the phrase "crime of violence," we examine the meaning of "use" and "physical force." The word "use" means the "intentional employment of . . . force, generally to obtain some end." Tran v. Gonzales, 414 F.3d 464, 470 (3d Cir. 2005). "Physical force" in the career offender provision refers to "force capable of causing physical pain or injury to another." United States v. Chapman, 866 F.3d 129, 132 (3d Cir. 2017) (quotation marks omitted) (quoting Johnson v. United States, 559 U.S. 133, 140 (2010)). Together, the "use of physical force" in § 4B1.2(a)(1) involves the "intentional employment of something capable of causing physical pain or injury to another person, regardless of whether the perpetrator struck the victim's body." Id. Under this definition, the qualifying physical force may be direct or indirect so long as it is "strong enough to constitute power," id. at 140, 142 (quotation marks omitted), and more than the "slightest offensive touching," id. at 139.

---

[3] The career offender provision also identifies certain offenses as crimes of violence. U.S.S.G. § 4B1.2(a)(2). Assault by a prisoner under § 2703's bodily fluid provision is not one of them. See id. (listing "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)").

C

Applying this definition, we next examine whether § 2703 is a "crime of violence" under § 4B1.2. To do so, we are required to use the much-criticized categorical approach,[4] which requires that we identify the elements of the statute of conviction, rather than the facts that led to the conviction, and compare those elements to the definition of "crime of violence." Descamps v. United States, 570 U.S. 254, 260 (2013) (citation omitted); United States v. Ramos, 892 F.3d 599, 606 (3d Cir. 2018). Where the statute of conviction contains variations with alternate elements, such that "certain elements of the statute fit within the definition of a crime of violence, while other alternative elements do not," we may look beyond the elements to determine which part of the statute formed the basis for the conviction.[5] United States v. Jones, 740 F.3d 127, 134 (3d Cir. 2014). This so-called "modified categorical approach" permits courts to consider "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual

---

[4] See, e.g., United States v. Chapman, 866 F.3d 129, 136-39 (3d Cir. 2017) (3d Cir. 2021) (Jordan, J., concurring) (collecting cases); see also United States v. Scott, ___F.4th ___, 2021 WL 4302516 at *7-10 (3d Cir. Sept. 22, 2021) (collecting cases).

[5] If the variation "sweeps more broadly than the [Guidelines-defined crime of violence], a conviction under [that variation] is not a career offender predicate even if the defendant actually committed the offense in a way that involved the use (or threatened use) of physical force against another." Chapman, 866 F.3d at 134 (alterations in original) (citation omitted).

basis for the plea was confirmed by the defendant, or [] some comparable judicial record [embodying] this information." Shepard v. United States, 544 U.S. 13, 26 (2005).

The version of § 2703 in effect at the time of Quinnones' convictions provided:

> A person who is confined in or committed to any local or county detention facility, jail or prison or any State penal or correctional institution or other State penal or correctional facility located in this Commonwealth is guilty of a felony of the second degree if he, while so confined or committed or while undergoing transportation to or from such an institution or facility in or to which he was confined or committed intentionally or knowingly, commits an assault upon another with a deadly weapon or instrument, or by any means or force likely to produce serious bodily injury. A person is guilty of this offense if he intentionally or knowingly causes another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material[6] when, at the time of the offense, the person knew, had reason to know, should have known or believed such fluid or material to have been obtained from an individual, including the person charged under this section, infected by a communicable disease, including, but not limited

---

[6] We use the word "fluid" to also capture "material."

7

> to, human immunodeficiency virus (HIV) or
> hepatitis B.

18 Pa. Cons. Stat. § 2703 (2019).[7] Thus, a defendant could violate the statute if she: (1) committed an "assault upon another with a deadly weapon"; (2) committed an assault "by any means or force likely to produce serious bodily injury"; or (3) "cause[d] another to come into contact with [a bodily fluid]" that came from someone infected with a communicable disease. Id. Regardless of whether the statute is viewed as indivisible or divisible, the parties do not dispute that Quinnones was convicted of the portion of § 2703 that made it a crime for a prisoner to cause another to come into contact with a bodily fluid that came from someone with a communicable disease, and that this is the least culpable way to violate the statute.

Having determined that the statutory variation concerning use of "bodily fluids" formed the basis for Quinnones' conviction, we next look at that offense's elements to "ascertain the least culpable conduct hypothetically necessary to sustain a conviction." United States v. Dahl, 833 F.3d 345, 350 (3d Cir. 2016) (quotation marks omitted). To secure a conviction under the relevant portion of § 2703, the Commonwealth must prove the defendant: (1) was a prisoner; (2) caused the victim to come into contact with bodily fluid by throwing, tossing, spitting, or expelling the fluid; (3) knew, had reason to know, or should have known or believed the fluid

---

[7] The statute was amended in 2020 to separate the "deadly weapon"/"force likely to produce bodily injury" and "bodily fluid" prongs into two different subsections. 2020 Pa. Legis. Serv. Act 2020-63 (H.B. 256).

8

came from someone who had a communicable disease; and (4) either (a) her purpose was to have the victim have contact with the fluid or (b) she was aware she would almost certainly cause the victim to have contact with the fluid. See Pennsylvania Suggested Standard Criminal Jury Instructions § 15.2703(A) (2019). Under these elements, the least culpable conduct for which a defendant can be convicted under the statute is (1) spitting or expelling fluid when (2) the person should have known the fluid was infected.

D

We will now determine whether spitting or expelling fluid under § 2703 necessarily involves the use of physical force contemplated by § 4B1.2. As stated previously, "use of physical force" under § 4B1.2 involves the "intentional employment of something capable of causing physical pain or injury to another person, regardless of whether the perpetrator struck the victim's body." Chapman, 866 F.3d at 133. Spitting or expelling fluid in their least culpable forms do not involve force for the purpose of § 4B1.2 because such acts are not capable of causing physical pain or injury.[8] Cf. Ramos, 892 F.3d at 612 (holding that a Pennsylvania conviction for aggravated assault with a deadly weapon under 18 Pa. Cons. Stat. § 2702(a)(4) is a crime of violence because it is "nearly

---

[8] One can imagine that spitting could cause injury or pain in some extreme circumstances, but that is not the test under the categorical approach. To be a crime of violence, the least extreme case of spitting under the statute must be able to cause pain or injury. See Singh v. Ashcroft, 386 F.3d 1228, 1234 (9th Cir. 2004) (noting the categorical approach is "not concerned with the most extreme case").

9

impossible to conceive of a scenario in which a person could knowingly or intentionally injure, or attempt to injure, another person with a deadly weapon without engaging in at least some affirmative, forceful conduct"). For this reason, many of our sister circuits have held that where a crime can be committed by spitting, that crime—like § 2703—does not categorically involve "physical force" as defined in Chapman and Johnson.[9]

---

[9] Relying on Stokeling v. United States, 139 S. Ct. 544 (2019), the Government argues that because spitting could provoke another to respond with physical force that could cause injury, it qualifies as the type of force constituting a crime of violence. Even if spitting may provoke a physical reaction from another that could cause physical pain or injury, Stokeling does not convert spitting into a crime of violence. In Stokeling, the Supreme Court examined whether robbery constituted a violent felony under the Armed Career Criminal Act ("ACCA"). 139 S. Ct. at 550. It examined definitions of robbery and concluded that common law robbery must involve force that would be expected to overcome the victim's resistance. Id. at 551-52. Thus, the Court's discussion of resistance or provocation does not change Johnson's definition of "crime of violence." Rather, Stokeling elaborates on what type of force is sufficient to constitute robbery and holds that such force exceeds the Johnson minimum. See id. at 552-53 ("Our understanding of 'physical force' comports with Johnson . . . . [T]he force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense contemplated by Johnson."); see also Reliford v. United States, 773 F. App'x 248, 251 (6th Cir. 2019) (not precedential) ("The Supreme Court [in Stokeling] clarified that the ACCA encompasses robbery offenses that require the criminal to

See, e.g., United States v. Carthorne, 726 F.3d 503, 512 (4th Cir. 2013) (holding that assault and battery of a police officer in Virginia is not a crime of violence under the career offender provision because it can be committed "by spitting in a man's face"); United States v. Evans, 576 F.3d 766, 768 (7th Cir. 2009) (holding that aggravated battery on a pregnant victim in Illinois is not a crime of violence under the career offender provision because it includes "deliberately spit[ting] on a pregnant woman").[10]

---

overcome the victim's resistance." (quotation marks omitted)).

[10] See also United States v. Taylor, 848 F.3d 476, 493 (1st Cir. 2017) (holding that simple assault under 18 U.S.C. § 111(a) is not a violent felony under the ACCA because it can be committed "by spitting in a mail carrier's face"); United States v. Jones, 914 F.3d 893, 903, 905-906 (4th Cir. 2019) (holding that "spitting at another's face—which can be accomplished in a rude or angry manner but without violent physical force—constitutes an assault" but does not "categorically involve[] the use, attempted use, or threatened use of violent physical force" under the ACCA); Johnson v. United States, 784 F. App'x 373, 377-78 (6th Cir. 2019) (not precedential) (holding that spitting while infected with communicable disease, even with the intent to transmit a cold, "does not involve the use of furious, severe, or vehement force" under the ACCA) (citing Johnson, 559 U.S. at 140); Reliford, 773 F. App'x at 252 (holding that battery in Michigan is not a violent felony under the ACCA because it can be committed by spitting); United States v. Ama, 684 F. App'x 736, 741 (10th Cir. 2017) (not precedential) (holding that simple assault under 18 U.S.C. § 111(a) is not a violent felony under the

11

Because the least culpable conduct under § 2703's bodily fluids provision does not include "physical force" as defined in Chapman, it is not a "crime of violence" under § 4B1.2.

E

Moreover, even if spitting or expelling a fluid involved physical force, the state of mind required to complete the offense under § 2703 reveals that it is not a crime of violence. The Supreme Court has held that if an offense can be committed with recklessness or negligence, it is not a crime of violence. Borden v. United States, 141 S. Ct. 1817, 1825 (2021) (recklessness); Leocal v. Ashcroft, 543 U.S. 1, 9, 13

_____

ACCA because it can be committed by "spitting and throwing liquid substances on a federal employee"); United States v. Mason, 709 F. App'x 898, 904 (10th Cir. 2017) (not precedential) (holding that assault and battery of a police officer is not a violent felony under the ACCA because it can be committed by spitting in the face); United States v. Dominguez-Mayoroqui, 748 F.3d 918, 921 (9th Cir. 2014) (holding that simple assault under 18 U.S.C. § 111(a) is not a crime of violence under the Sentencing Guidelines' enhancement for unlawful entry because it can be committed by "spitting in [a] mail carrier's face"); United States v. Maldonado-Lopez, 517 F.3d 1207, 1209 (10th Cir. 2008) (holding that a Colorado harassment law was not a crime of violence under the Sentencing Guidelines' enhancement for unlawful entry because it included "both violent and nonviolent crimes . . . because it could include violent physical contact, such as striking a victim, or physical contact not involving force, such as spitting on a victim").

12

(2004) (negligence).[11]  As a result, we must consider the state of mind with which the offense can be committed.  Section 2703 has two state of mind components.  To violate § 2703, a defendant must knowingly or intentionally cause another to come into contact with a fluid by engaging in certain specified acts, such as spitting (the "spitting element").  Thus, the actus reus must be performed knowingly or intentionally and not recklessly or negligently.  A different mens rea applies to what the defendant knew about the fluid (the "fluid element").  Under the statute, the defendant needs to have known or should have known that the bodily fluid came from someone with a communicable disease.

Section 4B1.2 provides that a crime of violence must have "an" element that involves the use, attempted use, or threatened use of force.  U.S.S.G. § 4B1.2.  One sister circuit has read this language to mean that so long as one of the elements of the offense is satisfied by knowing or intentional conduct, the fact that other elements can be satisfied by a lower mens rea is of no consequence.  United States v. Werle, 877 F.3d 879, 883 (9th Cir. 2017) (negligence as to element of putting victim in "reasonable fear that the threat to kill would be carried out" for harassment); United States v. Lawrence, 627 F.3d 1281, 1288 (9th Cir. 2010) (recklessness as to

---

[11] Borden and Leocal bind our analysis because the statutes considered there—ACCA and 18 U.S.C. § 16(a) respectively—are sufficiently similar to the career offender provision.  See, e.g., United States v. Brown, 765 F.3d 185, 189 n.2 (3d Cir. 2014) (ACCA cases binding on career offender cases); Henry v. Bureau of Immigration and Customs Enforcement, 493 F.3d 303, 308 (3d Cir. 2007) (Section 16(a) cases binding on career offender cases).

element of substantial bodily harm for assault), overruled on other grounds by Descamps v. United States, 570 U.S. 254 (2013). While that may be true for the statutes under consideration in those cases, the same does not apply here.

The lower mens rea in Lawrence and Werle applied to the results of the actus reus rather than to attendant circumstances that make the actus reus dangerous. For instance, the threat statute at issue in Werle required proof that the defendant "subjectively know" that he was communicating a threat to use physical force and that the threat placed the victim "in reasonable fear that the threat would be carried out." 877 F.3d at 883 (quoting Wash. Rev. Code 9A.46.020). The lower mens rea component of the statute focused on the impact on the victim's state of mind. The Lawrence court examined a statute that criminalized an intentional assault that recklessly inflicted substantial bodily harm, so the court was evaluating a statute that had as an element the results of the intentional act. 627 F.3d at 1285 (discussing Wash. Rev. Code 9A.36021(1)(a)).

Section 2703, in contrast, requires proof that the defendant knew why the instrument of the crime, such as spitting saliva, was dangerous. The Commonwealth must prove what the defendant knew or should have known about the source or content of the fluid. Notably, § 2703 was enacted as part of a larger movement among state legislatures in the 1990s to respond to the AIDS crisis and the then-perceived effect of inmates and others using bodily fluids to cause harm. See generally Developments in the Law—Animus and Sexual Regulation, 127 Harv. L. Rev. 1767, 1777 (2014) (describing criminalization of HIV and how media reports "ignited hysteria and rage" regarding the disease without regard to

14

actual transmission risks).  To that end, the statute specifically concerns not just bodily fluids but infected fluids.  Thus, the state of mind requirement for the fluid element is as important as the state of mind applicable to the spitting element for determining whether the predicate offense here is a qualifying crime of violence.

The fluid element includes the state of mind of "should have known," and thus embodies the standard for negligence. See Model Penal Code § 2.02(2)(d) (providing that a person acts negligently if he is not but "should be aware" of such a "substantial and unjustifiable risk," in "gross deviation" from the norm).  An offense that can be committed negligently is not a crime of violence.  See Leocal, 543 U.S. at 9, 13 (evaluating Florida's DUI statute, which does not specify a mental state for operating a vehicle, and holding that because that statute could reach "individuals who were negligent or less," it was not a crime of violence and explaining that "use . . . of physical force . . . most naturally suggests a higher degree of intent than negligent or merely accidental conduct"); see also United States v. Castleman, 572 U.S. 157, 171 (2014) (noting that use of force is "the act of employing [the tool] knowingly as a device to cause physical harm"); Chapman, 866 F.3d at 133 (requiring the "intentional employment of something capable of causing physical pain or injury").[12]   A defendant can be

_____

[12] See also United States v. Simmons, 917 F.3d 312, 320-21 (4th Cir. 2019), as amended (Mar. 6, 2019) (holding that because assault in North Carolina can be satisfied with "culpable negligence," it cannot constitute a crime of violence under the Guidelines); Ramirez v. Lynch, 810 F.3d 1127, 1133 (9th Cir. 2016) (stating that "to qualify as a crime of violence

15

convicted of § 2703's bodily fluids felony with only a negligent state of mind as to whether the fluid originated from an infected person. For this additional reason, it is not a qualifying "crime of violence" under § 4B1.2.[13]

---

[under 18 U.S.C. § 16(a), the defendant] must have 'use[d] force' with a mens rea that incorporates a degree of intent greater than does negligence or recklessness" (alteration in original)).

[13] In support of its argument that it is of no consequence that certain elements of § 2703 have a lower mens rea, the Government identifies crimes of violence, such as bank robbery, that include elements for which there is no mental state, and thus could be viewed as criminalizing negligence. See Appellee's Br. at 18 ("Many violent crimes include additional, nonviolent elements; for instance, the bank robbery convictions in this case involve not only the use of force, but also . . . the existence of federal insurance[, which specifies no mens rea.]"); see also 18 U.S.C. § 2113(f) ("'[B]ank' means any member bank of the Federal Reserve System . . . and any institution the deposits of which are insured by the Federal Deposit Insurance Corporation."). The insurance requirement for bank robbery, however, is a jurisdictional hook about which a defendant need not have knowledge, see 3d Cir. Model Criminal Jury Instructions 6.18.2113A, while the infection requirement here requires knowledge or reason to have had knowledge. Moreover, Leocal itself involved a DUI statute that did not "require any mental state with respect to the use of force against another person," yet "operat[ing] a vehicle" is impossible without intent. Leocal, 543 U.S. at 13 (quoting Fla. Stat. § 316.193(3)(c)(2)). The Supreme Court still held it was not a crime of violence because at least some elements were satisfied by negligence or less. See id. at 9.

## III

For the foregoing reasons, we will vacate Quinnones' sentence and remand for resentencing.